[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 971 
Attorney General Troy King appeals from a judgment entered by the trial court declaring unconstitutional an act of the legislature creating an additional circuit judgeship in the 29th Judicial Circuit. We reverse and remand.
 I. Factual Background
On five separate occasions the legislature has provided for the creation of a third judgeship for the 29th Judicial Circuit (Talladega County). Each time, the legislature pushed back the creation of the judgeship. On the first four occasions, the legislation contemplated filling the office by an election to be held several years after the enactment of the act establishing the judgeship for a term commencing in the January following the election. On the fifth occasion the legislature opted for a different method of filling the office — appointment by the governor.
The third circuit judgeship was originally created by Act No. 85-546, Ala. Acts 1985 ("the 1985 Act"). Section 9 of the 1985 Act provided:
 "There is hereby created and shall be established the office of circuit judgeship *Page 972 
No. 3 in the 29th Judicial Circuit, which shall be in addition to the two circuit judgeships now existing. Provided, the additional circuit judgeship hereby created shall first be filled AT the general election to be held in 1988, and the first judge so elected shall serve a full term of office beginning on the first Monday following the second Tuesday in January, 1989."
(Emphasis added.) Section 11 of the 1985 Act appropriated funding for the additional judgeship for fiscal year 1988-89.
Act No. 87-348, Ala. Acts 1987, amended Sections 9 and 11 of the 1985 Act. Section 9, as amended, provided:
 "There is hereby created and shall be established the office of circuit judgeship No. 3 in the 29th Judicial Circuit, which shall be in addition to the two circuit judgeships now existing. Provided the additional circuit judgeship hereby created shall first be filled AT the general election to be held in 199U, and the first judge so elected shall serve a full term of office beginning on the first Monday following the second Tuesday in January, 1995."
(Emphasis added.) The amendment to Section 11 appropriated funding for the additional judgeship for fiscal year 1994-95.
Act No. 93-302, Ala. Acts 1993, further amended these two sections. Section 9, as amended, provided:
 "There is hereby created and shall be established the office of circuit judgeship No. 3 in the 29th Judicial Circuit, which shall be in addition to the two circuit judgeships now existing. Provided the additional circuit judgeship hereby created shall first be filled AT the general election to be held in 2000, and the first judge so elected shall serve a full term of office beginning on the first Monday following the second Tuesday in January, 2001."
(Emphasis added.) The 1993 amendment to Section 11 appropriated funding for the additional judgeship for fiscal year 2000-01.
Act No. 99-566, Ala. Acts 1999 ("the 1999 Act"), further amended Sections 9 and 11. Section 9, as amended, provided:
 "There is hereby created an additional judgeship in the Twenty-ninth Judicial Circuit which shall be Circuit Judgeship No. 3. The additional judgeship created by this act shall be filled AT the general election to be held in 2006 and the judge elected shall serve a full term of office beginning on the first Monday following the second Tuesday in January 2007."
(Emphasis added.) The 1999 amendment to Section 11 appropriated funding for the additional judgeship for fiscal year 2006-07.
Act No. 2006-355, Ala. Acts 2006 ("the 2006 Act"), the subject of this litigation, again amended Sections 9 and 11. Section 9, as amended, provided:
 "There is hereby created an additional judgeship in the Twenty-ninth Judicial Circuit which shall be Circuit Judgeship No. 3. The additional judgeship created by this act shall be filled by appointment of the Governor on or after October 1, 2009, from a list of nominees by the Talladega County Judicial Commission.[1] The judgeship shall be subject to election AT the general election to be held in 2010 and the judge elected shall serve a full term of office beginning on *Page 973 
the first Monday following the second Tuesday in January 2011."
(Emphasis added.) The 2006 amendment to Section 11 appropriated funding for the additional judgeship for fiscal year 2009-10. The 2006 Act was signed by the governor on April 13, 2006.
On April 7, 2006, Chad Woodruff, acting pursuant to the 1999 Act, filed a candidate-declaration form and a qualification form with the Alabama Democratic Party, and paid the filing fee to become a candidate for the newly created third circuit judgeship. On April 12, 2006, one day before the 2006 Act was signed into law, the chair of the Alabama Democratic Party certified to the secretary of state the names of the Party's candidates for the June 2006 primary election. The certification further provided that "[c]andidates who are unopposed are nominated." Woodruffs name appeared on page 8 of the list of candidates as the only Democratic candidate seeking to be elected to the third circuit judgeship; thus, he was certified as the Party's candidate.
 II. Course of Proceedings
On July 5, 2006, Harvey B. campbell, Jr., a registered voter in Talladega County, filed this declaratory-judgment action, naming as defendants Attorney General Troy King (hereinafter "the State") and the Talladega County Judicial Commission. campbell alleged that the provision of the 2006 Act for initially filling the office by gubernatorial appointment violated Art. VI, § 152, Ala. Const. 1901 (Off.Recomp.) ("All judges shall be elected by vote of the electors within the territorial jurisdiction of their respective courts."). campbell further alleged that the provision of the 2006 Act for initially filling the office by appointment impermissibly expanded the ways a vacancy can occur and be filled by gubernatorial appointment as contemplated by Art. VI, § 153, Ala. Const. 1901 (Off.Recomp.) ("The office of a judge shall be vacant if he dies, resigns, retires, or is removed. Vacancies in any judicial office shall be filled by the governor. . . ."). campbell also contended that the 2006 Act, with its requirement that the Talladega County Judicial Commission submit names to the governor from which the third judgeship appointment would be made, violated §§ 152 and 153 for the reasons previously stated.
campbell requested a judgment declaring that the 2006 Act was unconstitutional and that the third judgeship be filled in the November 2006 election pursuant to the 1999 Act. On August 14, 2006, campbell filed an amended complaint, which added the secretary of state, Nancy Worley, as a defendant and requested a temporary restraining order and/or preliminary injunction directing Secretary of State Worley to certify Woodruff as the candidate for the third judgeship to the Talladega County Probate Judge and requiring that his name appear on the ballot in the general election to be held November 7, 2006.
The State and the secretary of state (hereinafter referred to collectively as "the State defendants") filed an opposition to the request for a preliminary injunction and a motion for a judgment on the pleadings. On August 31, 2006, the trial court denied the motion of the State defendants for a judgment on the pleadings and granted campbell's motion for a preliminary injunction directing Secretary of State Worley to place Woodruff's name on the November 7, 2006, general-election ballot as the Democratic candidate for the third judgeship for the 29th Judicial Circuit.
Woodruff had no Republican opposition in the general election, and he received an overwhelming number of votes, approximately 14,000. On December 22, 2006, the Talladega County Judicial Commission *Page 974 
filed a cross-claim against the State defendants, alleging essentially the same grounds as campbell's complaint as to the unconstitutionality of the 2006 Act.[2] On January 12, 2007, the State defendants filed a motion to dismiss for failure to join a necessary party, or, in the alternative, a motion to join, Woodruff. Upon Woodruffs joinder as a coplaintiff, the trial court denied the State defendants' motion. Woodruff thereupon alleged that he had properly qualified with the Alabama Democratic Party on April 7, 2006, for the third judgeship; that he had been duly certified on April 12, 2006, as the Party nominee; that he had been duly elected in the November 7, 2006, general election; and that he had since then been certified by the secretary of state as the elected candidate for the third judgeship. Woodruff also adopted by reference all factual allegations and pleadings of campbell and the Talladega County Judicial Commission. Woodruff requested that the trial court declare the 2006 Act unconstitutional and that he be allowed immediately to commence his judicial term of office.
The trial court held a hearing on February 2, 2007, at which ore tenus evidence was presented, and heard testimony from campbell, Woodruff, Judge Julian M. King (place no. 1 circuit judge and ex officio chairman of the Talladega County Judicial Commission), and Clarence Haynes (clerk of the Talladega Circuit Court). On February 21, 2007, the trial court entered a detailed order concluding as follows:
 "1. Chad Woodruff was the duly qualified, nominated, and certified Democratic Party candidate for the Talladega County Circuit Judge, Place No. 3, and was the winner of the November 7, 2006 general election for this office.
 "2. Act No. 2006-355 is unconstitutional and is, therefore, null and void.
 "3. . . . Act No. 2006-355 did not operate to divest Mr. Woodruff of his right to be declared the elected candidate for this office.
 "4. . . . Mr. Woodruff shall be sworn in without further delay as the Talladega County Circuit Judge, Place No. 3; and the Administrative Office of Courts shall immediately compensate him and provide to him all benefits to which he may be entitled as the elected third judge for the 29th Judicial Circuit, upon assuming duties as judge."
The State filed its notice of appeal on February 28, 2007.[3]
 III. Standard of Review `"[W]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust.' Philpot v. State, 843 So.2d 122, 125 (Ala. 2002). `However, where the facts before the trial court are essentially undisputed and the controversy involves questions of law for the court to consider, the court's judgment carries no presumption of correctness.' Allstate Ins. Co. v. Skelton, 675 So.2d 377, 379 (Ala. 1996). Questions of law are reviewed de novo. BT Sec. Corp. v. W.R. Huff Asset Mgmt. Co., 891 So.2d 310
(Ala. 2004)."
Alabama Republican Party v. McGinley, 893 So.2d 337,342 (Ala. 2004).
 IV. Threshold Issues of Jurisdiction and Mootness
Campbell, Woodruff, and the Talladega County Judicial Commission (hereinafter collectively referred to as "the Talladega *Page 975 
County parties") have filed a motion to dismiss the State's appeal, arguing, in the alternative, that subject-matter jurisdiction is lacking and that the issues made the basis of the State's appeal are moot.
The Talladega County parties contend that this Court lacks jurisdiction over the subject matter in that this proceeding constitutes an impermissible post-election challenge to the legality of the election for the office of circuit judge for the 29th Judicial Circuit, which they say is precluded by § 17-16-44, Ala. Code 1975. Section 17-16-44 provides:
 "No jurisdiction exists in or shall be exercised by any judge or court to entertain any proceeding for ascertaining the legality, conduct, or results of any election, except so far as authority to do so shall be specially and specifically enumerated and set down by statute; and any injunction, process, or order from any judge or court, whereby the results of any election are sought to be inquired into, questioned, or affected, or whereby any certificate of election is sought to be inquired into or questioned, save as may be specially and specifically enumerated and set down by statute, shall be null and void and shall not be enforced by any officer or obeyed by any person. If any judge or other officer hereafter undertakes to fine or in any wise deal with any person for disobeying any such prohibited injunction, process, or order, such attempt shall be null and void, and an appeal shall lie forthwith there from to the Supreme Court then sitting, or next to sit, without bond, and such proceedings shall be suspended by force of such appeal; and the notice to be given of such appeal shall be 14 days."
(Emphasis added.)
The Talladega County parties contend that the State defendants' failure to seek appellate review of the trial court's August 31, 2006, order placing Woodruffs name on the November 2006 general-election ballot either deprives this Court of subject-matter jurisdiction or moots this appeal. The Talladega County parties rely upon Bell v. Eagerton,908 So.2d 204, 207 (Ala. 2002) ("Therefore, because Bell did not seek and obtain an injunction to stop the November 7, 2000, election for Lowndes County district court judge, and because Bell did not contest the election of Terri Bozeman to that office, this Court cannot nullify her election or order a new election."); and Buskey v. Amos, 294 Ala. 1, 2, 310 So.2d 468, 469
(1975) ("In all cases involving election disputes, time is of the essence. It has been a policy of the courts of this state to handle such cases speedily before issues become moot, if requested to do so.").
The State's response to the Talladega County parties' motion to dismiss the appeal does not direct us to any statute specifically authorizing this proceeding as an exception to the general rule set forth in § 17-16-44.[4] Instead, the State contends that an appeal from the preliminary injunction entered on August 31, 2006, was unnecessary. The State contends that the confluence of several circumstances justified its failure to appeal the order of August 31, 2006, before the November 2006 general election. First, the State points out that the trial court's order did not declare the 2006 Act unconstitutional; instead, it found "that a substantial controversy exists as to the constitutionality of [the 2006 Act] that requires a further hearing or hearings." The State then points to the fact that the secretary of state complied with the injunction and certified *Page 976 
Woodruffs name as a candidate to the probate judge of Talladega County. The State thus concludes that on the day of the circuit court's order, the secretary of state "took action that rendered any subsequent appeal of the circuit court's order moot." Attorney General's Opposition to Appellees' Joint Motion to Dismiss Appeal, p. 4.
The State relies on Morrison v. Mullins, 275 Ala. 258,154 So.2d 16 (1963), in which this Court dismissed as moot an appeal from the denial of injunctive relief where, pending appeal, the defendant-appellee rescinded the qualifications for taking a test to determine eligibility to fill a position and replaced them with new qualifications, and the plaintiff-appellant had not attempted to establish his eligibility under the new qualifications. In dismissing the appeal, this Court stated:
 "We have held that if an event happening after hearing and decree in circuit court, but before appeal is taken, or pending appeal, makes determination of the appeal unnecessary or renders it clearly impossible for the appellate court to grant effectual relief, the appeal will be dismissed."
275 Ala. AT 259, 154 So.2d AT 18. Morrison is easily distinguishable, however, because the event the State asserts makes any appeal of the August 31, 2006, order moot is the secretary of state's compliance with the order, an entirely different circumstance than was presented in Morrison, where the defendant-appellee, not subject to an injunction, merely changed the qualifications applicable to the plaintiff-appellant pending appeal. In such instance it is not possible for the appellate court to award meaningful relief. See Mills v. Green, 159 U.S. 651, 653, 16 S.Ct. 132,40 L.Ed. 293 (1895):
 "The duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it. It necessarily follows that when, pending an appeal from a judgment of a lower court, and without any fault of the defendant, an event occurs which renders it impossible for this court, if it should decide the case in favor of the plaintiff, to grant him any effectual relief whatever, the court will not proceed to a formal judgment, but will dismiss the appeal."
(Emphasis added.)
We do not here deal with a changed circumstance that "renders it impossible for this court, if it should decide the case in favor of the plaintiff, to grant him any effectual relief whatever." 159 U.S. AT 653, 16 S.Ct. 132. The State could have immediately appealed the August 31, 2006, order, and sought a mandatory injunction from this Court, pending appeal, requiring the secretary of state to set aside the previous certification. If this Court had been so inclined on proper motion by the State, [5] it would have been situated to grant the State "effectual relief on the merits.
The State next contends that this proceeding is not an election contest and *Page 977 
 therefore that this Court can ignore the jurisdictional limitations of § 17-16-44. Citing Marbury v. Madison, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803), the State alludes to this Court's "inherent authority to review the orders of inferior courts," especially "where, as here, the inferior court has used its authority to strike down an act of the Alabama Legislature." Attorney General's Opposition to Appellees' Joint Motion to Dismiss Appeal, p. 6. Noting the presumption of constitutionality applicable to statutes, the State argues that because the 2006 Act was presumed constitutional on the day the November 2006 general election was held, "there is substantial doubt as to whether there was a valid, lawful election capable of supporting an election contest." Attorney General's Opposition to Appellees' Joint Motion to Dismiss Appeal, p. 8.
Article VI, § 142(b), Ala. Const. 1901 (Off.Recomp.), provides:
 "(b) The circuit court shall exercise general jurisdiction in all cases except as may otherwise be provided by law. The circuit court may be authorized by law to review decisions of state administrative agencies and decisions of inferior courts. It shall have authority to issue such writs as may be necessary or appropriate to effectuate its powers, and shall have such other powers as may be provided by law."
(Emphasis added.) The legislature has restricted the jurisdiction of the circuit courts by enacting § 17-16-44. This Court has previously addressed the effect of this jurisdictional limitation in several cases. In Dennis v.Prather, 212 Ala. 449, 103 So. 59 (1925), this Court construed a predecessor statute to § 17-16-44. This Court noted:
 "The general rule without question is that courts of equity will not interfere by injunction with the holding of elections political in character, nor take jurisdiction of a contest after the election is held. But this court is committed to the proposition that equity will interfere by injunction to restrain elections not authorized by law. It will also restrain the usurpation of office, or the assumption of functions of office where no lawful office exists."
212 Ala. AT 452, 103 So. AT 61-62 (emphasis added). Speaking to the predecessor to § 17-16-44, the Dennis Court stated:
 "Statutes restricting the jurisdiction of courts of equity, as defined AT common law, and reiterated by statute in Alabama, should be strictly construed. Construing this statute as a whole, it appears, broadly speaking, to cover cases inquiring into the validity of elections theretofore held — a proceeding in the nature of a contest of an election, whether the legality, conduct or results of the election be the point of attack. We doubt if it would include a case of injunction against the exercise of any form of official power, derived through or by virtue of an election not authorized by law and therefore wholly void. The equity jurisdiction in such case does not rest so much upon matters going to the conduct of the election, but upon the usurpation or abuse of official power under color of a void election."
212 Ala. AT 452-53, 103 So. AT 62 (emphasis added). This Court then concluded:
 "Following our former decisions, and, we think, in keeping with sound principles, we hold that the court of equity has the power by injunction to prevent the holding of such election as is here involved [a referendum on moving the site of the courthouse], in a case wholly unauthorized by law, there appearing no adequate legal remedy." *Page 978 
212 Ala. AT 453, 103 So. AT 62. Based upon Dennis, we conclude that litigation challenging the consequences of a void election does not come within the sweep of the limitation on subject-matter jurisdiction in § 17-16-44.
Against this backdrop, we turn to Bell v. Eagerton, in which we held that a disqualified candidate's appeal was rendered moot by his failure to seek and obtain an injunction to stop the election before it took place and his failure to contest the election. However, Bell is distinguishable because the issue in that case was whether the candidate met the residency requirements. We did not deal with that aspect of equitable jurisdiction, "the usurpation or abuse of official power under color of a void election," which we held inDennis was unaffected by the precursor to § 17-16-44. 212 Ala. AT 453, 103 So. AT 62. Here, on the other hand, we deal with the State's interest, through the attorney general, in upholding the 2006 Act against constitutional challenge in litigation that invokes equitable jurisdiction beyond the context of matters dealing with the conduct of the election such as the credentials of a candidate.[6]
because we are not here dealing with a limitation on subject-matter jurisdiction under the dichotomy recognized inDennis, [7] the remaining basis for dismissal of the appeal is grounded upon estoppel by reason of delay in prosecuting the appeal until after the election — prudential limitations on the exercise of judicial power not involving subject-matter jurisdiction.
Article V, § 137, Ala. Const. 1901 (Off.Recomp.), authorizes the legislature to "require the attorney general to defend any or all suits brought against the state." Section 36-15-1(2), Ala. Code 1975, requires the attorney general to attend to cases pending in the courts of the state "in which the state may be in any manner concerned." Assuming, without deciding, that estoppel might apply under the circumstances here presented in litigation between private parties, dismissal of this appeal based upon the State's failure to take steps necessary to enjoin the occurrence of the election before it took place would impermissibly apply the bar of estoppel to the State of Alabama arising from the attorney general's delay in the discharge of duties owed to the public pursuant to *Page 979 
§ 137 and § 36-15-1. This we cannot do. SeeGreenwood v. State ex rel. Bailes, 230 Ala. 405, 407,161 So. 498, 499 (1935):
 "Reduced to the last analysis, the defense sought to be interposed is in the nature of an estoppel. But this court in State ex rel. Lott v. Brewer, 64 Ala. 287, [298 (1879),] declared that estoppels against the state cannot be favored, and that though they may arise in some instances, yet, upon the broad ground of public policy, they cannot arise, certainly as to the exercise of governmental functions, `from the laches of its officers.'"
We therefore deny the motion to dismiss the appeal.
 V. Validity of the 2006 Act A. Woodruff's Status as a Quasi-Official
Woodruff and the Talladega County Judicial Commission contend that Woodruffs status as the nominee of the Alabama Democratic Party makes him a "quasi-incumbent." They rely upon State exrel. Norrell v. Key, 276 Ala. 524, 526, 165 So.2d 76, 78
(1964), in which this Court held, in the context of measuring the timeliness of a quo warranto proceeding, that the holder of a certificate of nomination has the status of a "quasi-officer," thereby obliging the relator to initiate his action prior to the election.
Article VI, § 151, Ala. Const. 1901 (Off.Recomp.), authorizes the legislature to increase or decrease the number of circuit judges. Section 151(c) provides: "An act decreasing the number of circuit or district judges shall not affect the right of any judge to hold his office for his full term." This limitation on legislative authority is confined to officeholders and is silent as to nominees. Woodruff and the Talladega County Judicial Commission have not cited any authority applying the concept of "quasi-officer" in the context of a statutorily created office that has been abolished whereby the quasi-officer was deemed a "quasi-incumbent" and thereby insulated from the effects of the abolition of the office. We decline to rely upon the concept of "quasi-officer," useful in settings not involving vested rights to public offices of statutory creation, as the basis to limit further the authority of the legislature provided in § 151.
This result is consistent with the view that a public office that is a creature of the legislature confers no vested right. See Lane v. Kolb, 92 Ala. 636, 640, 9 So. 873, 874
(1891):
 "When an office is not provided for by the Constitution, but is the creature of statute, there is no element of contract between the officer chosen and the public, or constituent body which confers the office. Being created, and its functions and emoluments conferred, by the legislature, the same body may abolish it, take away or reduce its functions and emoluments, or make any change its wisdom or caprice may suggest, not inhibited by the organic law."
Applying similar principles, other courts have rejected a contention by a candidate that his status protects him from the impact of legislation abolishing the office for which he is a candidate. See State ex rel. Weller v. Schirmer,131 Ohio St. 455, 3 N.E.2d 352 (1936), in which an individual filing a petition for nomination as a candidate for judge of a court of common pleas before the repeal of a statute providing for such office was held not entitled to have his name placed on the ballot AT an election held after the repeal; Stateex rel. Core v. Green, 160 Ohio St. 175, 181,115 N.E.2d 157, 160-61 (1953) ("While the statute was in effect, the petitioners had the privilege to demand an election, but when the statute was repealed before the election was held, such privilege was taken away without any impairment of vested or contractual *Page 980 
rights."); and Corn v. City of Oakland City,415 N.E.2d 129, 133 (Ind.Ct.App. 1981):
 "The question of whether or not an office holder or candidate or officer elect has any vested right to an office has been clearly settled contrary to Corn's position. In State, ex rel. Yancey v. Hyde, [129 Ind. 296, 28 N.E. 186 (1891)], our Supreme Court, AT 129 Ind. 302, 28 N.E. 186[,] said:
 "`Offices are neither grants nor contracts, nor obligations which can not be changed or impaired. They are subject to the legislative will AT all times, except so far as the Constitution may protect them from interference. Offices created by the Legislature may be abolished by the Legislature. The power that creates can destroy. The creator is greater than the creature. The term of an office may be shortened, the duties of the office increased, and the compensation lessened, by the legislative will. (Citations omitted.)'"
Woodruffs status as the nominee of the Democratic Party does not insulate him from the effects of the 2006 Act in amending the 1999 Act.
B. Whether the Provision for Gubernatorial Appointment inthe 2006 Act is Unconstitutional
The Talladega County parties contend that the provision in the 2006 Act allowing the governor to fill the office of the third circuit judgeship by appointment violates §§ 152 and 153, Ala. Const. 1901 (Off.Recomp.).[8]
An act of the legislature arrives with a presumption of constitutionality; a party challenging that constitutionality has the burden of overcoming that presumption. State exrel. King v. Morton, 955 So.2d 1012 (Ala. 2006). We note at the outset that the challenged provision of the 2006 Act ("The additional judgeship created by this act shall be filled by appointment of the Governor on or after October 1, 2009, from a list of nominees by the Talladega County Judicial Commission.") does not refer to a vacancy. The 2006 Act admits of only one rational construction" the governor shall appoint the first holder of the office.
The State relies upon Griggs v. Bennett,710 So.2d 411, 412 (Ala. 1998), in which this Court stated: "Although § 6.14 [of Amendment No. 328, now § 153, Ala. Const. 1901 (Off.Recomp.)] lists the usual causes of vacancy — death, resignation, retirement, or removal of an incumbent judge — it has long been recognized that vacancies may occur for reasons other than the usual causes listed in an appointment provision."[9] In Griggs, a statute enacted in 1990 created a judgeship; the *Page 981 
initial officeholder was to be elected AT the general election to be held in 1992. Litigation dealing with clearance of the statute under the Voting Rights Act prevented the election contemplated by the statute from taking place. In 1996, the United States Department of Justice granted preclearance for the new judgeship. The attorney general issued an opinion stating that under what is now § 153, the governor could fill a vacancy by appointment.
The plaintiffs in Griggs filed an action seeking an order directing the secretary of state to place the judgeship on the ballot for the primary and general elections in 1996, rather than filling the office by appointment. The trial court denied relief, holding that the judgeship should be slated for election in 1998. On appeal, this Court affirmed, noting "that vacancies may occur for reasons other than the usual causes listed in an appointment provision." 710 So.2d AT 412. However, in no instance has this Court ever upheld the authority of the governor to fill a "vacancy" pursuant to a statute providing for appointment of the initial office-holder. We decline to extendGriggs so as to permit the complete disregard of § 153 and the emasculation of § 152, which provides: "All judges shall be elected by vote of the electors within the territorial jurisdiction of their respective courts." We do not have the prerogative, by judicial fiat, of reviving a practice once permitted by our Constitution but subsequently repealed.[10]
 C. Severability
The remaining issue is whether the offending portion of the 2006 Act can be severed, thereby allowing the remainder of the 2006 Act, including the provision deferring the election until 2010, to remain in place. This Court is required to sever and save what can be saved in a statute in the event a portion of the statute is determined to be unconstitutional. See § 1-1-16, Ala. Code 1975:
 "If any provision of this Code or any amendment hereto, or any other statute, or the application thereof to any person, thing or circumstances, is held invalid by a court of competent jurisdiction, such invalidity shall not affect the provisions or application of this Code or such amendment or statute that can be given effect without the invalid provisions or application, and to this end, the provisions of this Code and such amendments and statutes are declared to be severable."
The absence of a severability provision is not determinative. See State ex rel. Jeffers v. Martin, 735 So.2d 1156,1158 (Ala. 1999):
 "To be sure, `[t]he inclusion of a severability clause is a clear statement of legislative intent to that effect, but the absence of such a clause does not necessarily indicate the lack of such an intent or require a holding of inseverability.' [City of Birmingham v. Smith, 507 So.2d 1312, 1315 (Ala. 1987)] (emphasis added). Nevertheless, `the authority of a court to eliminate invalid elements of an act and yet sustain the valid elements is not derived from the legislature, but *Page 982 
rather flows from powers inherent in the judiciary.' 2 Norman J. Singer, Sutherland Statutory Construction, § 44.08 (5th ed. 1992)."
Here we have a severability clause within the original act — the 1985 Act — creating the additional judgeship for the 29th Judicial Circuit, thereby justifying the conclusion that there exists a "clear statement" of legislative intent in favor of severability. See § 15 of the 1985 Act, which was left unchanged by the amendment in the 2006 Act ("The provisions of this Act are severable. If any part of the Act is declared invalid or unconstitutional, such declaration shall not affect the part which remains.").
This Court addressed the standard for ascertaining severability in Newton v. City of Tuscaloosa, 251 Ala. 209, 217,36 So.2d 487, 493 (1948):
 "A criterion to ascertain whether or not a statute is severable so that by rejecting the bad the valid may remain intact is: The act `ought not to be held wholly void unless the invalid portion is so important to the general plan and operation of the law in its entirety as reasonably to lead to the conclusion that it would not have been adopted if the legislature had perceived the invalidity of the part so held to be unconstitutional.' A Bertolla Sons v. State, 247 Ala. 269, 271, 24 So.2d 23, 25
[(1945)]; Union Bank Trust Co. v. Blan, 229 Ala. 180, 155 So. 612 [(1934)]; 6 R.C.L. 125, § 123."
(Emphasis added.)
Also further guiding our analysis is State ex rel. Jeffersv. Martin:
 "Under these well-established principles, the judiciary's severability power extends only to those cases in which the invalid portions are `"not so intertwined with the remaining portions that such remaining portions are rendered meaningless by the extirpation."' Hamilton v. Autauga County, 289 Ala. 419, 426, 268 So.2d 30, 36 (1972) (quoting Allen v. Walker County, 281 Ala. 156, 162, 199 So.2d 854, 860 (1967)). If they are so intertwined, it must `"be assumed that the legislature would not have passed the enactment thus rendered meaningless."' Id. In such a case, the entire act must fall. 2 [Norman J.] Singer, [Sutherland Statutory Construction] § 44.04, AT 502 [(5th ed. 1992)]. Nevertheless, `if the remaining portions of an Act are complete within themselves, sensible and capable of execution, the Act will stand.' Mitchell v. Mobile County, 294 Ala. 130, 134, 313 So.2d 172, 174 (1975)."
735 So.2d AT 1159.
See also City of Mobile v. Salter, 287 Ala. 660,666-67, 255 So.2d 5, 10 (1971), in which this Court quoted fromAllen v. Louisiana, 103 U.S. 80, 83, 26 L.Ed. 318
(1880), as follows:
 "`It is an elementary principle that the same statute may be in part constitutional and in part unconstitutional, and that if the parts are wholly independent of each other, that which is constitutional may stand while that which is unconstitutional will be rejected. "But," . . . "if they are so mutually connected with and dependent on each other, as conditions, considerations, or compensations for each other as to warrant a belief that the legislature intended them as a whole, and that, if all could not be carried into effect, the legislature would not pass the residue independently, and some parts are unconstitutional, all the provisions which are thus dependent, conditional, or connected must fall with them."'"
In Springer v. State ex rel. Williams, 229 Ala. 339,157 So. 219 (1934), the county school board had had the authority to appoint a superintendent of education until a statute enacted in 1931 called for the election *Page 983 
in 1932 of a county superintendent of education for a four-year term commencing in 1933. The incumbent superintendent had been appointed in 1930 to a term of four years. The election took place in 1932, and a candidate qualified and was elected. In 1934 the school board reappointed the incumbent for a term of two years. The winner of the election in 1932, after waiting until the conclusion of the four-year appointive term, instituted a quo warranto proceeding seeking the ouster of the incumbent. This Court struck down as unconstitutional the provision calling for the ouster of the incumbent during his four-year term that had commenced in 1930. However, the Court upheld the portion of the act calling for election in 1932 for a term that exceeded the period of the incumbent's initial appointment. In upholding a portion of the act, the Court in Springer stated:
 "In the case of State ex rel. Crumpton v. Montgomery et al., Excise Commissioners, 177 Ala. 212, 59 So. 294, 302 [(1912)], this court, speaking through Mr. Justice McClellan, held: `An enactment may be valid in part and invalid in part, and the general rule is that, if the valid and invalid parts are independent of each other, separable, and the valid competent to stand without the invalid, leaving an enactment sensible and capable of being executed, the valid parts will survive and the invalid will be stricken. Powell v. State, 69 Ala. 10
[(1881)]; Doe ex dem. Davis v. Minge, 56 Ala. 121 [(1876)]; State v. Davis, 130 Ala. 148, 30 So. 344, 89 Am. St. Rep. 23 [(1901)]; 36 Cyc. pp. 976-978. It is also to be said, in the nature of limitation of the rule stated, that the whole statute will be stricken if the valid and invalid parts are so connected and interdependent in subject-matter, meaning, and purpose that it cannot be presumed that the Legislature would have passed the one without the other, or where the striking of the invalid would cause results not contemplated or intended by the lawmakers, or where that invalid is the consideration or inducement of the whole act, or where the valid parts are ineffective and unenforceable in themselves, according to the legislative intent.'"
229 Ala. AT 342-43, 157 So. AT 222. See also City ofBirmingham v. Smith, 507 So.2d 1312, 1317 (Ala. 1987), describing the test as whether the legislature would have enacted the statute without the void provision.
Addressing severability in its February 21, 2007, order, the trial court held:
 "The general purpose and intent of Act No. 2006-355
was to change the manner of filling the judgeship from an elective position to an appointed position. To accomplish this radical change after 20 years of the position being subject to an election, the legislature had to delay the judgeship. The delay was only the means to accomplish the filling of the judgeship by an appointment as opposed to an election."
The trial court further found that the language in the 2006 Act dealing with the election following the initial appointment was "merely surplusage because our constitution schedules elections subsequent to appointment." The trial court thus concluded:
 "An appointment and subsequent election of the judgeship as provided in Act No. 2006-355 are so connected and interdependent in subject matter that the whole must be stricken. The appointment was a consideration and inducement to a subsequent election. The election language was surplusage because Constitutional Amendment 615 [now, Local Amendments, Talladega *Page 984 
County, § 6 (Off.Recomp.)] provides for elections after valid and legal appointments. The two (appointment and election) are intertwined in a manner that one logically cannot fall without the other. Therefore the whole act must fail."
The 2006 Act unquestionably accomplished three departures from what was then the existing law, i.e., the 1999 Act:
 1. It postponed the time for the commencement of service on the part of a third judge in the 29th Judicial Circuit from the second Tuesday in January 2007 to October 1, 2009;
 2. It provided for filling the office by appointment, rather than by election; and
 3. It provided for filling the office AT the general election to be held in 2010 with the judge so elected serving a full term of office beginning on the first Monday following the second Tuesday in January 2011.
We must determine whether we agree with the trial court's ultimate conclusion that "the appointment was a consideration and inducement to a subsequent election." Our review of an issue concerning the intent of the legislature is confined to the terms of the legislative act itself, unaided by the views of observers of or participants in the legislative process.City of Daphne v. City of Spanish Fort, 853 So.2d 933,945 (Ala. 2003). We can look to "`the history of the times, the existing order of things, the state of the law when the instrument was adopted, and the conditions necessitating such adoption.'" City of Birmingham v. Hendrix,257 Ala. 300, 307, 58 So.2d 626, 633 (1952) (quoting In reUpshaw, 247 Ala. 221, 223, 23 So.2d 861, 863 (1945)). We can also look to an act's "`relation to other statutory and constitutional provisions, view its history and thepurposes sought to be accomplished and look to the previous state of law and to the defects intended to be remedied.'" Hendrix, 257 Ala. AT 307, 58 So.2d AT 633 (quoting Birmingham Paper Co. v. Curry, 238 Ala. 138,140, 190 So. 86, 88 (1939)).
The Talladega County parties call our attention to the provision of the 2006 Act requiring that the inaugural term of the third judge should commence on or after October 1, 2009, significantly before the second Tuesday in January 2011. Striking only that portion of the 2006 Act while maintaining the balance of the act, they argue, would result in a delay not intended by the legislature. So, although it is irrefutable that the 2006 Act contemplated delay, by severing only the portion providing for the appointment of the new judge and leaving in place the portion providing for the election, we will have effectuated a further delay. If the legislature had intended that the judgeship not be filled into 2011, it would not have set a date as early as 2009 for the appointment.[11]
On the other hand, if we do not sever the provision for appointment and save the portion deferring filling the office until January 2011, the election of 2006 and the commencement of a term in January 2007 is a fait accompli. Of course, this circumstance is flatly contrary to the timetable clearly contemplated by the 2006 Act with its deferral to a date no earlier than October 1, 2009, for the commencement of service *Page 985 
by the third circuit judge. If we decline to sever and save, thereby striking down the 2006 Act in its entirety, the legislature could not restore the timetable contemplated by the 2006 Act by subsequent legislation because § 151 preserves from legislative action the right of a judge to hold office for the full term.
The legislature has not shown any reluctance to defer the filling of this seat, as evidenced by three previous postponements of the time for creation of the office. If we sever and save, we preserve the status quo contemplated by the 2006 Act" no immediate occupant of the office. Under this alternative, if it comports with legislative will to have an occupant in place earlier than January 2011, the legislature could act early in the 2008 regular legislative session so as to permit filling the seat in the 2008 election or provide for a special election AT some time before the 2010 election.
When we reject severability and strike down in its entirety an act that contains an invalid provision, we must be comfortable with the conclusion that a majority of the legislators voting in favor of the bill that became the act would prefer no statute AT all to the alternative of eliminating only the provision that violates the constitution. In this context, the question posed would be:
 "If the provision in the 2006 Act allowing the governor to appoint AT some time after October 1, 2009, is struck down, are you content to allow that circumstance to nullify the separate provision of the 2006 Act repealing the election this year (2006) and replacing it with an election in 2010?"
Section 1 of the 2006 Act, in the first sentence, creates an additional judgeship. There follows two separate sentences. The first of these two sentences calls for filling the office by appointment "on or after October 1, 2009." The second of these two sentences subjects the judgeship to election AT the general election in 2010. The record of three previous postponements (1987, 1993, and 1999) of the time for filling the additional judgeship for the 29th Judicial Circuit is convincing evidence that the deferral of the commencement of the term from 2006 to a later date was not a secondary consideration wholly subordinate to the provision for commencement of the term by gubernatorial appointment. The answer to the hypothetical question whether the legislature would have been satisfied by the result of striking down the entire 2006 Act would therefore have to be an emphaticno. A legislator so polled would be cognizant of the fact that saving that part that is constitutional would permit subsequent enactment of a statute that passed constitutional muster while continuing to provide for a term beginning AT a date other than in 2006, as was clearly intended by the 2006 Act, consistent with the will of three preceding legislatures. On the other hand, if we conclude that the will of the legislature would have been to see the entire 2006 Act fail by reason of constitutional infirmity as to only a portion of it and thus to allow an election to take place in 2006, we will have ignored the clearly expressed will of the legislature in that portion of the 2006 Act unaffected by constitutional infirmity. Such aggressive exercise of the power of judicial review is inconsistent with our obligations under the constitutional mandate for separation of powers.
As this Court stated in Springer: "If the act thus deleted of the invalid part is competent to stand without the invalid part, and leaves an enactment complete within itself, sensible, and capable of being executed, it will stand, unless the two parts" the valid and invalid — are so inseparable as to raise the presumption that the Legislature *Page 986 
would not have enacted the one without the other." 229 Ala. AT 343, 157 So. AT 223. Applying that standard to this case, the portion of Section 1 of the 2006 Act amending the provision in the 1985 Act, as last amended, which called for an election in 2006, and providing instead for an election in 2010 for a term of office to begin in 2011, clearly constitutes an enactment "complete within itself, sensible, and capable of being executed."
In summary, we conclude that it is more logical to presume that the legislature did not contemplate election of a third circuit judge in the 2006 election than it is to assume that, if the legislature knew that the office could not be filled by gubernatorial appointment on or after October 1, 2009, it would prefer the status quo before the 2006 Act of an election in 2006. This is especially so in light of the legislature's previous disposition to postpone repeatedly the effective date and of the availability to the legislature of the means to adjust further the effective date by subsequent legislation if we decline to sever and save.
We therefore cannot conclude that the primary intent of the legislature was to change the method of filling the judgeship from that of an election to appointment. The unconstitutional provision of the 2006 Act is not "`so important to the general plan and operation of the law in its entirety as reasonably to lead to the conclusion that it would not have been adopted if the legislature had perceived the invalidity of the part so held to be unconstitutional.'" Newton v. City ofTuscaloosa, 251 Ala. AT 217, 36 So.2d AT 493 (quotingA. Bertolla Sons v. State, 247 Ala. 269, 271,24 So.2d 23, 25 (1945)). Nor can we find that the appointment clause and the deferral of the election to 2010 are "so intertwined" that it must be assumed that the legislature would not have passed an act that, shorn of the offending provision, has become "meaningless," where, as here, the remaining portions of the 2006 Act are "complete within [themselves], sensible, and capable of execution." State ex rel. Jeffers v. Martin, 735 So.2d AT 1159. that aspect of the 2006 Act deferring the onset of the term until January 2011 remains in effect, thereby amending the provision for an election in 2006 in the 1999 Act.
 VI. Conclusion
This Court's subject-matter jurisdiction is not eliminated by § 17-16-44. Neither does the State's failure to appeal the trial court's order of August 31, 2006, preclude judicial review subsequent to Woodruffs election. Woodruffs status as the nominee of the Democratic Party did not insulate him from the authority of the legislature to abolish the office for which he was a candidate. Although the provision in the 2006 Act for filling the office of circuit judge initially by gubernatorial appointment violates §§ 152 and 153, Ala. Const. 1901 (Off.Recomp.), that provision is severable. That aspect of the 2006 Act deferring the onset of the term until January 2011 remains in effect, thereby amending the provision for an election in 2006 in the 1999 Act. We reverse the judgment of the trial court declaring the 2006 Act unconstitutional in its entirety, and we remand the cause for further proceedings consistent with this opinion.
MOTION TO DISMISS APPEAL DENIED; REVERSED AND REMANDED.
SEE, WOODALL, STUART, SMITH, BOLIN, and MURDOCK, JJ., concur.
COBB, C.J., and PARKER, J., dissent.
COBB, Chief Justice (dissenting).
I respectfully dissent. This case presents a question of first impression in this State, and, in answering it, a majority of this Court has chosen to remove a judge *Page 987 
from the office in which he has been faithfully and effectively serving the citizens of Talladega County since his election by an overwhelming majority of those citizens. I believe that the correct legal analysis of this question shows that the majority incorrectly decides two issues, either of which is sufficient to uphold the election in this case. First, I am of the opinion that the State's failure to timely seek review of the trial court's order placing Chad Woodruffs name on the ballot for the November 2006 election deprived the courts of this State of jurisdiction to address the validity of the election AT issue in this case. Second, even if I agreed that this Court has jurisdiction, I believe that the majority errs in holding that the offending portion of Act No. 2006-355, Ala. Acts 2006 ("the 2006 Act"), is severable. I agree with the trial court that the constitutionally defective "appointment" language in the 2006 Act is not severable from the remainder of the statute, so that the entire 2006 Act is unconstitutional and cannot be read piece-meal to disenfranchise the voters of Talladega County.
 I. State's Failure to Timely Seek Review
The State's failure in this case to seek review of the trial court's order of August 31, 2006, which placed Woodruffs name on the November 2006 ballot for the general election, effectively deprived this Court of jurisdiction over this appeal. The majority's citation to Ala. Code 1975, § 17-16-44, is apt, and that statute emphatically provides that our courts are without jurisdiction to address the proceedings in this case absent some specific statutory authority. The majority then notes that the State has supplied us with no such authority. Moreover, the majority notes that "[t]he State could have immediately appealed the August 31, 2006, order, and sought a mandatory injunction from this Court, pending appeal, requiring the secretary of state to set aside the previous certification. If this Court had been so inclined on proper motion by the State, it would have been situated to grant the State `effectual relief on the merits." 988 So.2d AT 976 (footnote omitted). Thus, the State could have presented a timely challenge to the August 31, 2006, order in which it raised its concerns about the effect of placing Woodruffs name on the ballot for the November 2006 election. However, the State chose not to make such a challenge, even in the context of § 17-16-44, which plainly states: "No jurisdictionexists in or shall be exercised by any judge or court toentertain any proceeding for ascertaining the legality . . . ofany election, except so far as authority to do so shall bespecially and specifically enumerated and set down by statute.. . ." Further, the State pursued this course in the face of the precedent in Bell v. Eagerton, 908 So.2d 204
(Ala. 2005), and Buskey v. Amos, 294 Ala. 1,310 So.2d 468 (1975), both of which make clear that a timely challenge to an election is a critical prerequisite for a court's jurisdiction to entertain the challenge. Further, Bell,Harvey v. City of Oneonta, 715 So.2d 779 (Ala. 1998), andEtheridge v. State ex rel. Olson, 730 So.2d 1179
(Ala. 1999), all applied the predecessor to § 17-16-44, Ala. Code 1975, § 17-15-6, to reject the sort of collateral challenges to elections the State attempts in this case.
For all that, the State opted not to pursue a timely appeal of the trial court's August 31, 2006, order; neither did it seek injunctive relief challenging the trial court's action. Further, it is settled law that the State could have brought a quo warranto proceeding to challenge Wood-ruffs status on the ballot, see Corprew v. Tallapoosa County,241 Ala. 492, 3 So.2d 53 (1941) (discussing the availability of the quo warranto proceeding to determine the validity of an office). Instead, the State *Page 988 
seeks to invalidate Judge Woodruffs election, by the overwhelming majority of the votes cast in Talladega County, long after that election was a fact and Judge Woodruff had entered into the office. I believe that this situation is exactly the sort of situation § 17-16-44 and its predecessor, § 17-15-6, sought to avoid. Moreover, I believe that the majority's reliance upon Dennis v.Prather, 212 Ala. 449, 103 So. 59 (1925), and the speculation in that opinion that § 17-15-6 should be strictly construed, results in a holding by this Court that the plain language of § 17-16-44 may now be disregarded AT the convenience of the attorney general.
I believe that State ex rel Norrell v. Key,276 Ala. 524, 165 So.2d 76 (1964), presents a more applicable rationale for a holding in this case. In Norrell, this Court considered the plaintiffs claim that a county commissioner, Fred Key, should be ousted from his office because he had not been properly nominated by the Democratic Party and his name had been improperly placed on the ballot. Key had been nominated in May 1962 and elected on November 6, 1962. The plaintiff brought the quo warranto action challenging Key's right to office in August 1963. The trial court entered a judgment in favor of Key, and the plaintiff appealed. The Court stated:
 "In this state quo warranto is a statutory proceeding and to be maintained it must meet the requirements of the statute as to parties and procedure. Louisville N.R. Co. v. State, 154 Ala. 156, 45 So. 296 [(1907)]. As for public officers, the proceeding may be brought to oust from office any person who `usurps, intrudes into, or unlawfully holds or exercises any public office,' or does an act which `forfeits his office.' Title 7, § 1136, Code of Ala.1940 [now § 6-591, Ala. Code 1975]. In State ex rel. McIntyre v. McEachern, 231 Ala. 609, 166 So. 36 [(1936)], we said: `It will lie to test the qualifications of one to hold an office when they are sufficient to make it unlawful for him [sic] with them to hold the office. Those qualifications must go to his eligibility to hold the office or sufficient to cause its forfeiture.' Here there is no question as to appellee's forfeiture of the office. The substance of appellant's complaint is that the appellee holds the office unlawfully, such being an attack on the appellee's qualifications as a nominee.
 "We find appropriate to a decision of this case the statement in 29 C.J.S. Elections § 141, p. 211: `Objections relating to nominations must be timely made. It is too late to make them after the nominee's name has been placed on the ballot and he has been elected to office; his election cannot be impeached on the ground that statutory requirements regarding nominations were not complied with in his case . . . . AT 18 Am.Jur., Elections, § 131, p. 263, it is said:
 "`It is a firmly established general rule that objections to irregularities in the nomination of a candidate should be taken prior to election. Voters finding a ticket or the names of candidates on the official ballot are not required to determine whether they are entitled to a place thereon, but may safely rely on the action of the officers of the law and on the presumption that they have performed their duty. Thus, an election in which the voters have fully, fairly, and honestly expressed their will is not invalid because the certificate of nomination of the successful candidate is defective through the omission of some detail; nor is the title of the successful candidate affected by a subsequent decision holding the law under which the nominations were *Page 989 
made invalid. . . . Some decisions have gone so far as to hold that in the absence of a statutory provision to the contrary, an election is not invalidated by the fact that the nomination of the successful candidate was fraudulent and not made in the manner prescribed by statute, unless the noncompliance with the law had the effect of preventing a fair vote.'"
276 Ala. AT 525-26, 165 So.2d AT 77-78 (emphasis added). The Court in Key affirmed the judgment of the trial court rejecting the plaintiffs challenge to Key's election.
Moreover, although I agree that an action by the State is not normally subject to estoppel, see, e.g., Greenwood v. Stateex rel. Bailes, 230 Ala. 405, 161 So. 498 (1935), I do not believe that this general policy should be subject to the application of an explicit legislative pronouncement, as in § 17-16-44, nor do I believe that this policy should apply when the State, in a dilatory action, seeks to invalidate a fundamental constitutional right, in this case the right of the citizens of Talladega County to exercise their right to vote. In large part, our country was founded on this right:
 "A share in the sovereignty of the State, which is exercised by the citizens AT large in voting AT the elections, is one of the most important rights of the subject, and in a republic ought to stand foremost in the estimation of the law. It is that right by which we exist, as a free people, and it will certainly therefore never be admitted that less ceremony ought to be used in divesting any citizen of that right than in depriving him of his property. Such a doctrine would ill suit the principles of the Revolution which taught the inhabitants of this country to risk their lives and fortunes in asserting their liberty, or, in other words, their right to share in the government. Let me caution against precedents which may in their consequences render out title to this great privilege precarious."
3 Papers of Alexander Hamilton 544-45 (Harold C. Syrett, ed., Columbia University Press 1962). The United States Supreme Court is in accord: "It is beyond cavil that Voting is of the most fundamental significance under out constitutional structure.' Illinois Bd. of Elections v. Socialist WorkersParty, 440 U.S. 173, 184 (1979)." Burdick v.Takushi, 504 U.S. 428, 433, 112 S.Ct. 2059,119 L.Ed.2d 245 (1992); so are the courts of this State: Hutchins v.DCH Reg'l Med. Ctr., 770 So.2d 49 (Ala. 2000); Gideonv. Alabama State Ethics Comm'n, 379 So.2d 570 (Ala. 1980) (both acknowledging the United States Supreme Court's holding in Williams v. Rhodes, 393 U.S. 23,89 S.Ct. 5, 21 L.Ed.2d 24 (1968), that the right to vote is a fundamental constitutional right). See also Amend. XV, U.S. Const., and Art. I, § 33, Ala. Const. 1901.
Given the significance of the right to vote here AT issue, I cannot accept a rule that estoppel never applies to the State and that the State need not timely prosecute any action it may have to challenge the exercise of that right. Moreover, I believe that the majority's holding on this point unwisely vests in the attorney general an unrestricted ability to challenge elections otherwise long settled. Surely even the State is AT some point subject to a requirement that it timely assert a claim or be silent, and I believe that that point is shown in this case. I would hold that the State can be estopped to challenge the result of the exercise by citizens of this State of their fundamental constitutional right to vote in the event it fails to assert that challenge in a reasonably timely manner as determined by the applicable statutes and case authority. Thus, I would conclude that the plain language of § 17-16-44, *Page 990 
particularly when read in the context of our settled law that requires a challenge to an elected office to be timely made, does not permit the courts to exercise jurisdiction over the State's untimely challenge to Judge Woodruffs election in this case. Even if I could reasonably conclude that § 17-16-44 is inapplicable under these circumstances, I would hold that the State's action to invalidate the fundamental rights of the voters of Talladega County is barred by its failure to timely assert that action. I therefore dissent from this Court's denial of the Talladega County parties' motion to dismiss the appeal.
 II. Severability
Further, even if I were to agree that this Court had jurisdiction in this case, I believe that the majority's application of the doctrine of severability to the 2006 Act is incorrect. I do agree with the Court's conclusion that the trial court correctly determined that the 2006 Act is constitutionally invalid; however, I must dissent from the majority's rationale that the three sentences that constitute that portion of the 2006 Act before us are not so "closely intertwined" as to be severable. State ex rel. Jeffers v.Martin, 735 So.2d 1156 (Ala. 1999). The result of the majority's rationale is to find the 2006 Act unconstitutional while still invalidating Judge Woodruffs election.
I agree with the majority that a critical consideration on the issue of severability is the legislature's intent. Newtonv. City of Tuscaloosa, 251 Ala. 209, 36 So.2d 487 (1948). Further, our settled law regarding the determination of legislative intent in this context requires a reference to the language in the enacting portion and the preamble of the act.Ball v. Jones, 272 Ala. 305, 315-16, 132 So.2d 120,129 (1961)("In case of doubt or inconsistency between language in the enacting part of a statute and language in the preamble, the preamble controls because it expresses in the most satisfactory manner . . . the purpose of the act. Sutherland Statutes and Statutory Construction, Vol. 2, p. 342, § 4801(3)."). See also City of Bessemer v. McClain,957 So.2d 1061 (Ala. 2006). The preamble to the 2006 Act states that it is being enacted "to provide for the appointmentand subsequent election . . . of Circuit Judgeship No. 3." that is, the very existence of the office of circuitjudgeship no. 3 is first contingent upon appointment.
Unlike each of the preceding legislative attempts to fill this office that specified election, the legislature's intent in enacting the 2006 Act was clearly that no election could take place if the office was not first filled by appointment.
Moreover, the record contains evidence of the circumstances surrounding the enactment of the 2006 Act that includes the testimony of Clarence Haynes, a former legislator and sponsor of one of the prior bills creating the new judgeship, that the purpose of the 2006 Act was to delay the filling of the new judgeship by three years and then to fill it by appointment. In light of these circumstances, I agree with the trial court's determination, quoted in the majority opinion, that the general purpose of the 2006 Act was to fill the new judgeship in Talladega County by appointment. Only when the judgeship existed as a result of that appointment could an election take place. I conclude that this is exactly the sort of intertwining that supports the trial court's determination that the entire 2006 Act is constitutionally invalid.
State ex rel. Jeffers provides a good example of a situation in which a provision in an act was severable because it was not so intertwined. The Court in State ex rel.Jeffers addressed a challenge to a provision of the legislature's statutory plan creating and regulating city school boards. *Page 991 
AT issue in State ex rel. Jeffers was a portion of the general provision regulating the composition of the school boards and providing that teachers would not be eligible to serve as members of a school board. The Court applied the principles already noted by the majority to conclude that the constitutionally infirm language could be properly severed from the many provisions of the statute providing for the type and composition of school boards. The Court stated that because the offending language was only an exception to the general rule and because the rule was fully applicable without the exception, severability was warranted. 735 So.2d AT 1159-60.
This case is entirely distinct from State ex rel.Jeffers. Unlike the statutory plan in State ex rel.Jeffers, the 2006 Act has only one purpose — the filling of the newly created judgeship. that purpose was to be accomplished by an appointment. The fact that it was subsequently to be filled by election was wholly contingent upon that initial establishment. I do not believe that the majority's parsing of the three sentences in the 2006 Act, no matter how careful, can overcome this fact. Accordingly, even in the event that this Court could find an appropriate basis on which to exercise jurisdiction over this case, I would conclude that the trial court correctly determined that the 2006 Act was constitutionally invalid in its entirety and that Judge Woodruff was properly elected to office under the revived act — Act No. 99-566, Ala. Acts 1999.
PARKER, J., concurs.
[1] Amendment No. 615, Ala. Const. 1901 (Off. Recomp., Local Amendments, Talladega County, § 6), created the Talladega County Judicial Commission "for the purpose of nominating to the Governor persons for appointment to any vacancy in the offices of judge of the circuit court, judge of the district court, and district attorney." 
[2] Apparently AT some point during these proceedings the Talladega County Judicial Commission was realigned as a plaintiff.
[3] The secretary of state did not appeal.
[4] As is discussed more fully below, the State contends that § 17-16-44 does not operate in the context of a challenge that does not constitute a contest to an election.
[5] See Rule 62(g), Ala. R. Civ. P., which states: "(g)Power of Appellate Court Not Limited. The provisions in this rule do not limit any power of an appellate court or of a judge or justice thereof to stay proceedings during the pendency of an appeal or to suspend, modify, restore, or grant an injunction during the pendency of an appeal or to make any order appropriate to preserve the status quo or the effectiveness of the judgment subsequently to be entered."
[6] The Chief Justice, in her dissent, states: "Further,Bell, Harvey v. City of Oneonta, 715 So.2d 779 (Ala. 1998), and Etheridge v. State ex rel. Olson,730 So.2d 1179 (Ala. 1999), all applied the predecessor to § 17-16-44, Ala. Code 1975, § 17-15-6, to reject the sort of collateral challenges to elections the State attempts in this case." 988 So.2d AT 987. As previously noted, Bell dealt with a candidate's satisfaction of the residency requirements;Harvey dealt with a candidate's compliance with the Fair campaign Practices Act; and Etheridge dealt with a candidate's failure to timely file pre-election disclosure forms. The foregoing cases do not involve an allegation of a void election and cannot therefore be categorized as "the sort of collateral challenges to elections the State attempts in this case." 988 So.2d at 987. Likewise, State ex rel. Norrell v.Key, 276 Ala. 524, 165 So.2d 76 (1964), also relied upon by the Chief Justice, is similarly distinguishable because it did not involve a challenge to the statute under which the election was held; instead, it dealt with the validity of a candidate's nomination.
[7] The Chief Justice relegates the doubts emphatically expressed in Dennis as to the validity of a limitation upon the judicial power to annul the consequences of "an election not authorized by law and therefore wholly void"(Dennis, 212 Ala. AT 453, 103 So. AT 62) as "speculation" and concludes that "the plain language of § 17-16-44 may now be disregarded AT the convenience of the attorney general." 988 So.2d AT 988. Of course, only in the event of a challenge to the validity of the law under which the election is held would the jurisdiction of the courts be available, a limitation far more stringent than "the convenience of the attorney general."
[8] A determination that the 2006 Act is unconstitutional in its entirety would result in a reversion to the 1999 Act, pursuant to which Woodruff now holds office. See San AnnTobacco Co. v. Hamm, 283 Ala. 397, 406, 217 So.2d 803, 810
(1968) ("It appears to be uniformly held that where there is a valid act and an attempted but unconstitutional amendment to it, the original act is not affected, but remains in full force and effect.").
[9] The State does not argue that Amendment No. 615, Ala. Const. 1901 (Off. Recomp., Local Amendments, Talladega County, § 6), creating the Talladega County Judicial Commission "for the purpose of nominating to the Governor persons for appointment to any vacancy in the offices of judge of the circuit court, judge of the district court, and district attorney" (emphasis added) and applicable to "all
vacancies in the offices of judge of the circuit court" (emphasis added) displaces the more restrictive description of circumstances constituting a vacancy set forth in § 153. Consequently, we do not address that issue as a ground for reversing the trial court's judgment holding that the 2006 Act is unconstitutional. See Bettis v. Thornton,662 So.2d 256, 257 (Ala. 1995) (an argument not made on appeal is considered abandoned or waived). In all events, the State's failure to address this issue does not affect the ultimate disposition of this appeal.
[10] The ratification of Amendment No. 328, the Judicial Article, in 1973 repealed what was then Art. VI, § 159, Ala. Const. 1901, allowing gubernatorial appointment of circuit judges if a new circuit was created more than six months before the next general election with the judge so appointed serving until such election.
[11] The Chief Justice, in her dissent, concludes that the appointment provision is not severable from the 2006 Act and that the trial court correctly determined that the entire 2006 Act is unconstitutional. The question that begs answering in this analysis is why, if "the general purpose of the 2006 Act was to fill the new judgeship in Talladega County by appointment," 988 So.2d at 990, did the legislature not provide that the appointment take place immediately, rather than more than three years after the 2006 Act was enacted.