Iris Gay Etheridge appeals from a summary judgment for the State of Alabama ex rel. A. Robert Olson revoking her certificate of election. Exercising jurisdiction under Ala. Code 1975, §6-6-598 (authorizing the contest of an election in a quo warranto action only if the election cannot be contested in another statutory proceeding), the trial court revoked Ms. Etheridge's certificate because she had failed to comply with the filing requirements of the Fair Campaign Practices Act ("FCPA"), Ala. Code 1975, § 17-22A-1 et seq.[1] The summary judgment declared vacant Ms. Etheridge's position on the Orange Beach City Council. We reverse and remand.
The parties disagree over whether the State could have contested Ms. Etheridge's election under Ala. Code 1975, §11-46-69, which, in pertinent part, provides:
 "(a) The election of any person declared elected to any office of a city or town may be contested by any person who was at the time of the election a qualified elector of such city or town for any of the following causes:
". . . .
 "(2) The person whose election to office is contested was not eligible thereto at the time of such election;
". . . .
 "(b) Any contest of such an election must be commenced within five days after the result of the election is declared . . . ."
According to Ms. Etheridge, the trial court lacked subject-matter jurisdiction over this quo warranto action under § 6-6-598
because, she says, the State could have contested her election under § 11-46-69. See Ala. Code 1975, § 17-15-6, which states in part:
 "No jurisdiction exists in or shall be exercised by any judge, court or officer exercising chancery powers to entertain any proceeding for ascertaining the legality, conduct or results of any election, except so far as authority to do so shall be *Page 1181 
specially and specifically enumerated and set down by statute. . . ."
See also Harvey v. City of Oneonta, 715 So.2d 779 (Ala. 1998).
Citing City of Talladega v. Pettus, 602 So.2d 357 (Ala. 1992), the State takes the position that it had no way of challenging Ms. Etheridge's election under § 11-46-69. In Pettus, two Justices, construing § 17-22A-21 (part of the FCPA), stated that a certificate of election already issued to any person elected to a municipal office could not be judicially revoked for noncompliance with the FCPA. Five Justices concurred in the result reached in Pettus. The record indicates that the Orange Beach City Council, in accordance with § 11-46-55(a), declared Ms. Etheridge elected and issued her a certificate of election at a meeting of the council on October 1, 1996. According to the State, it was not until a decision was announced on February 7, 1997, in Ex parte Krages, 689 So.2d 799 (Ala. 1997), that it had a statutory basis for challenging Ms. Etheridge's election under the FCPA. In Krages, three Justices purported to overrule Pettus, stating that a certificate of election to a municipal office already issued could be revoked. Five Justices concurred in the result reached in Krages, three of them dissenting as to the reasoning of the lead opinion. The State points out that the five-day limitations period for filing an election contest under §11-46-69 had expired by the time Krages was announced; therefore, it argues, a quo warranto action provided its only statutory basis for challenging Ms. Etheridge's election and revoking her certificate of election.
Although the parties have ably framed their issue as being whether the State could have filed an election contest under §11-46-69, we see a more fundamental issue that needs to be addressed — whether the trial court had jurisdiction to revoke Ms. Etheridge's certificate of election in any proceeding, whether in an election contest under § 11-46-69 or in a statutory quo warranto action. In this respect, we note that neither Pettus norKrages has any precedential value. See Harvey, supra.[2]
Therefore, we are not constrained by the doctrine of staredecisis, and we take this opportunity to revisit the issue whether § 17-22A-21 authorizes the revocation of a certificate of election to a municipal office.[3]
The lead opinion in Pettus, which addressed this issue for the first time, reads in pertinent part as follows:
 "A court does not have the jurisdiction to interfere in an election result, unless a statute authorizes it to do so. Ala. Code 1975, § 17-15-6, divests courts of such jurisdiction. That statute provides, in pertinent part:
 "`No jurisdiction exists in or shall be exercised by any judge, court or officer exercising chancery powers to entertain any proceeding for ascertaining the legality, conduct or results of any election, except so far as authority to do so shall be specially and specifically enumerated and set down by statute . . .'
 "This Court, in Turner v. Cooper, 347 So.2d 1339, 1346 (Ala. 1977), said that `[c]ontests of elections are statutory creations, except insofar as we have noted, and the statutory requirements must be strictly complied with' (citations omitted).
 "Is a trial court authorized, by statute, to revoke a certificate of election issued to a winning candidate in a municipal election? We think not. A court can prevent the issuance of a certificate of election to a municipal office, but, once the certificate is issued, the court is without authority to revoke it. Section 17-22A-21 states: *Page 1182 
 "`A certificate of election or nomination shall not be issued to any person elected or nominated to state or local office who shall fail to file any statement or report required by this chapter. A certificate of election or nomination already issued to any person elected or nominated to state or county office who fails to file any statement or report required by this chapter shall be revoked.'
"(Emphasis added in [Pettus].)
 "The first sentence in the statute gives the Court the express power to prevent the issuance of a certificate of election to any person nominated to a `state or local office,' which is defined by § 17-22A-2(7) as `[a]ny office under the constitution and laws of the state, except circuit, district or legislative offices, filled by election of the registered voters of a single county or municipality, or by the voters of a division contained within a county or municipality,' but the second sentence of § 17-22A-21 omits the term `local office' and substitutes instead the term `county office.' It seems clear that the legislature deliberately made no provision for the revocation of a certificate of election in a municipal election. This Court, therefore, has no alternative but to hold that the legislature intentionally did not authorize the revocation of a municipal certificate of election."
602 So.2d at 359-60. (All emphasis in Pettus.)
In Krages, three Justices concluded that § 17-22A-21 was ambiguous and that Pettus's interpretation of that section was contrary to legislative intent. The lead opinion in Krages
states:
 "In short, Pettus's construction of § 17-22A-21 is unworkable. Therefore, to the extent it construes the second sentence of § 17-22A-21 as excluding municipal offices, Pettus is overruled."
689 So.2d at 806. (Emphasis original.)
After carefully reexamining Pettus and Krages, we conclude that Pettus interpreted § 17-22A-21 in the only way that it could be interpreted without violating the separation-of-powers doctrine and judicially legislating. As was noted in Pettus, § 17-22A-2(7), part of the "Definitions" section of the FCPA, provides this definition:
 "LOCAL OFFICE. Any office under the constitution and laws of the state, except circuit, district or legislative offices, filled by election of the registered voters of a single county or municipality, or by the voters of a division contained within a county or municipality."
The second sentence of § 17-22A-21 states:
 "A certificate of election or nomination already issued to any person elected or nominated to state or county office who fails to file any statement or report required by this chapter shall be revoked."
(Emphasis added.) Section 17-22A-21 is not ambiguous. It means what it says, and the term "local office" is specifically defined in the definitions section of the FCPA. The word "county," instead of the defined term "local office," is used in the second sentence of § 17-22A-21. The number of counties and their names are set out in Ala. Code 1975, § 11-1-1; "the City of Orange Beach" is not among them.
Therefore, consistent with the rationale of the lead opinion in Pettus, we hold that a certificate of election to a municipal office is not subject to revocation for failure of the person elected to comply with the FCPA and, therefore, that the trial court had no jurisdiction to revoke the certificate of election issued to Ms. Etheridge.
We note again, as we have done on previous occasions, that a court does not have jurisdiction to interfere in an election result unless a statute authorizes it to do so. The Legislature has made this abundantly clear. See § 17-15-6. We strongly urge the Legislature to reexamine § 17-22A-21. If in enacting that provision the Legislature meant for the term "county office" to mean "local office," it can, and should, amend § 17-22A-21 by substituting the word "local" for the word "county" in the second sentence. We also urge the Legislature to reexamine the first sentence of § 17-22A-21 in conjunction with § 11-46-69(a)(2). The first sentence of § 17-22A-21 states:
 "A certificate of election or nomination shall not be issued to any person elected or *Page 1183 
nominated to state or local office who shall fail to file any statement or report required by this chapter."
This provision indicates that the Legislature envisioned a workable procedure whereby the qualification of a candidate for a municipal office could be contested based on noncompliance with the FCPA and the issuance of a certificate of election to that candidate could be enjoined. However, given the fact that a municipal election can be contested under § 11-46-69 only after the challenged candidate has been declared, by the municipal governing body acting in accordance with § 11-46-55(a), to have been elected, there is usually a very narrow window of opportunity (if an opportunity exists at all) in which a contest can be filed and an injunction obtained to prevent the issuance of a certificate of election.[4] It appears that § 11-46-55(a) contemplates that the municipal governing body will forthwith issue a certificate of election to the person declared elected. As previously noted, the city council declared Ms. Etheridge elected and issued a certificate of election to her at the same council meeting. Rejecting language to the contrary in Pettus, this Court held in Harvey, supra, that a trial court has no jurisdiction over a declaratory-judgment action filed before an election in an attempt to enjoin the issuance of a certificate of election to a candidate who has not complied with the FCPA. It seems, therefore, that § 11-46-69(a)(2) would be available to contest a candidate's qualification under the FCPA only in specific instances where the municipal governing body declared a candidate elected and then delayed issuing its certificate of election to that candidate. However, in those instances where there is insufficient time following the declaration of election to obtain an injunction against the issuance of the certificate of election, there would appear to be no practical means of redress under § 11-46-69(a)(2). This, of course, raises the question, which we leave for another day, whether, under the existing statutory framework, the trial court would have jurisdiction over a quo warranto action filed immediately after the election, but before the municipal governing body had declared a winner, challenging the qualifications of a candidate under the FCPA and seeking to enjoin the issuance of a certificate of election.
For the foregoing reasons, the judgment is reversed and the case is remanded.
REVERSED AND REMANDED.
Hooper, C.J., and Maddox, See, Lyons, and Brown, JJ., concur.
Cook, J., concurs in the result and dissents from the rationale.
[1] The election was held on August 27, 1996, and a run-off election was held on September 17, 1996. Ms. Etheridge failed to timely file preelection disclosure forms that are required by the FCPA.
[2] Krages has been cited in only two cases — Harvey andDerryberry v. Sanders, 695 So.2d 1180 (Ala. 1997). Derryberry
did not involve the issue with which we are concerned in this case.
[3] This Court normally will not reverse a judgment on a point not argued by the parties. See Smith v. Equifax Services, Inc.,537 So.2d 463 (Ala. 1988). However, lack of subject-matter jurisdiction may not be waived by the parties, and it is the duty of an appellate court to consider lack of subject-matter jurisdiction ex mero motu. Ex parte Smith, 438 So.2d 766 (Ala. 1983). Furthermore, because of the confusion that has resulted from Pettus and Krages, and because of the importance of the basic issue presented (whether a popularly elected city official could be removed from office approximately 10 months after the election), we believe it would be imprudent for us not to reexamine those decisions.
[4] The Legislature has the power, within constitutional limitations, to provide for the manner in which the result of an election shall be determined and declared. Where the Legislature has so provided, the election is not complete until the legislative mandate is obeyed. The declaration of the result of an election is an indispensable part of the election process. The declaration furnishes the first authentic evidence of what the choice of the people is and by which the person elected can know that he is entitled to the office. See 26 Am.Jur.2d Elections § 400 (1996).
We note that an election contest under § 11-46-69 was filed in Krages, supra, which involved the same municipal election at issue here. However, the specific issue whether the trial court had jurisdiction over that contest (which was filed before the results of the election were declared by the city council) was not presented to or addressed by this Court.