988 So.2d 471 (2008)
William Earl ROPER and Cynthia Lanell Roper
v.
Ronald A. RHODES; James V. Perdue, in his official capacity as probate judge of Crenshaw County; and Beth Chapman, in her official capacity as secretary of state of Alabama.
1060331.
Supreme Court of Alabama.
January 11, 2008.
*472 Mark G. Montiel, Montgomery; and Kristen T. Ashworth of Bowron, Latta & Wasden, P.C., Mobile, for appellants.
William R. King, Luverne, for appellee Ronald A. Rhodes.
Bart Harmon and Winthrop E. Johnson of Webb & Eley, P.C., Montgomery; and John A. Nichols, Luverne, for appellee James V. Perdue.
Troy King, atty. gen., Kevin C. Newsome, deputy atty. gen., and James W. Davis, asst. atty. gen., for appellee Secretary of State Beth Chapman.
SMITH, Justice.
William Earl Roper and Cynthia Lanell Roper appeal from a judgment of the Crenshaw Circuit Court dismissing the Ropers' action against Ronald A. Rhodes; James V. Perdue, in his official capacity as probate judge of Crenshaw County; and Beth Chapman, in her official capacity as secretary of state of Alabama.[1] We dismiss the appeal.

Facts and Procedural History
William Earl Roper served on the Crenshaw County Board of Education, district 1, until 2006. Rhodes and one other candidate challenged William for that office in the June 6, 2006, Democratic primary. Following the primary election, William and Rhodes participated in a runoff election on July 18, 2006. William and Rhodes received an equal number of votes in the runoff election. To break the tie, the chairman of the Crenshaw County Democratic party conducted a "domino draw," and Rhodes prevailed. See § 17-13-21 (formerly § 17-16-39), Ala.Code 1975. On August 14, 2006, Rhodes was certified as the nominee for the Democratic party.
On October 30, 2006eight days before the November 7, 2006, general election William and Cynthia filed an action in the Crenshaw Circuit Court against Rhodes, Judge Perdue, and the secretary of state. The complaint alleged that, during the time leading to the primary and runoff elections, Rhodes had violated certain reporting provisions of the Fair Campaign Practices Act, § 17-22A-1 et seq., Ala. Code 1975 ("the FCPA").[2] Although it *473 asserted different theories,[3] the complaint sought two basic forms of relief: the revocation of Rhodes's certificate of nomination and the removal of his name from the ballot for the general election. The Ropers also filed a petition asking the trial court to issue an injunction postponing the November 7, 2006, election for the office of Crenshaw County Board of Education, district 1, or, in the alternative, prohibiting the certification of the election results for that office pending the outcome of this case.
Rhodes filed a motion to dismiss the complaint. Among other things, Rhodes asserted that the Ropers' action was untimely filed and that the trial court did not have subject-matter jurisdiction. The trial court held a hearing on November 6, 2006, to consider the Ropers' petition for an injunction postponing the election for the board-of-education office or prohibiting the certification of the election results for that office.
At the November 6, 2006, hearing, the trial court initially denied Rhodes's motion to dismiss and proceeded to hear testimony. On November 14, 2006, the trial court entered an order holding that the Ropers' action was an election contest, which had been untimely filed, and the trial court therefore denied all the Ropers' claims for relief.[4] The Ropers appealed to this Court.
Standard of Review
"`[B]ecause the underlying facts are not disputed and this appeal focuses on the application of the law to those facts, there can be no presumption of correctness accorded to the trial court's ruling.' Beavers v. County of Walker, 645 So.2d 1365, 1373 (Ala.1994) (citing First Nat'l Bank of Mobile v. Duckworth, 502 So.2d 709 (Ala.1987)). Appellate review of a ruling on a question of law is de novo. See Rogers Found. Repair, Inc. v. Powell, 748 So.2d 869 (Ala.1999); Ex parte Graham, 702 So.2d 1215 (Ala.1997)."
Ex parte Forrester, 914 So.2d 855, 858 (Ala.2005).

Discussion
The Ropers' claims for relief are based on allegations that Rhodes failed to file reports required to be filed under the FCPA. Specifically, the Ropers alleged that, before the primary and runoff elections, Rhodes had not filed the reports described in § 17-22A-8 of the FCPA.[5] *474 Relying primarily on Harvey v. City of Oneonta, 715 So.2d 779 (Ala.1998), and the authorities cited therein, the appellees argue that the trial court did not have subject-matter jurisdiction to address the Ropers' claims that Rhodes had violated provisions of the FCPA. We agree.
In Harvey, Mattie Harvey, a candidate for place number 3 on the Oneonta City Council, filed an action alleging that her opponent, Glen Whited, had not complied with the FCPA and seeking declaratory and injunctive relief. 715 So.2d at 779. It was undisputed that Whited had failed to file a statement required by the FCPA before the election, and Harvey sought a declaration that Whited had not complied with the FCPA and an injunction preventing the certification of Whited as the winner.[6] 715 So.2d at 779-80. Holding that the circuit court did not have jurisdiction to hear the action, this Court dismissed Harvey's appeal. 715 So.2d at 779.
This Court held that, instead of an action seeking declaratory and injunctive relief, Harvey should have filed an election contest under § 11-46-69, Ala.Code 1975, which sets forth the time limitation and the grounds for filing a contest to a municipal election. The Court first examined § 17-15-6, Ala.Code 1975, which stated:
"`No jurisdiction exists [in] or shall be exercised by any judge, court or officer exercising chancery powers to entertain any proceeding for ascertaining the legality, conduct or results of any election, except so far as authority to do so shall be specially and specifically enumerated and set down by statute; and any injunction, process or order from any judge, court or officer in the exercise of chancery powers, whereby the results of any election are sought to be inquired into, questioned or affected, or whereby any certificate of election is sought to be inquired into or questioned, save as may be specially and specifically enumerated and set down by statute, shall be null and void and shall not be enforced by any officer or obeyed by any person; and should any judge or other officer hereafter undertake to fine or in any wise deal with any person for disobeying any such prohibited injunction, process or order, such attempt shall be null and void, and an appeal shall lie forthwith therefrom to the supreme *475 court then sitting, or next to sit, without bond, and such proceedings shall be suspended by force of such appeal; and the notice to be given of such appeal shall be 14 days.'"
715 So.2d at 779 (emphasis added in Harvey). On the authority of Davis v. Reynolds, 592 So.2d 546 (Ala.1991), this Court in Harvey noted that "a candidate who does not file a statement or report required by the FCPA before the election in question is ineligible to be elected to the office at that election." Harvey, 715 So.2d at 780. Consequently, "[a]ny challenge to Whited's election on that basis [i.e., Whited's failure to file an FCPA-required statement] should have been filed as an election contest pursuant to § 11-46-69(a)(2)." 715 So.2d at 780-81. Because Harvey had not filed an election contest in compliance with § 11-46-69, the circuit court did not have jurisdiction to hear Harvey's claims. 715 So.2d at 781. This Court held that the judgment of the circuit court was void and dismissed the appeal. 715 So.2d at 781.
Although the secretary of state and Judge Perdue discuss Harvey in their briefs to this Court, the Ropers do not address it. The Ropers maintain that their action is not an election contest and that, therefore, it is not subject to the statutory requirementssuch as time limitationsfor bringing an election contest. Instead, they contend, it is a pre-election action (i.e., an action filed before the general election) seeking to enforce § 17-22A-21, Ala.Code 1975, which states:
"A certificate of election or nomination shall not be issued to any person elected or nominated to state or local office who shall fail to file any statement or report required by this chapter. A certificate of election or nomination already issued to any person elected or nominated to state or county office who fails to file any statement or report required by this chapter shall be revoked."
The Ropers argue that this Court has jurisdiction to enforce the "unambiguous and clear" language of § 17-22A-21. (Ropers' reply brief, p. 7.) The Ropers note that they filed their action before the general election, and they contend that rather than contesting an election, they were seeking to prevent Rhodes's name from appearing on the ballot for the November 7, 2006, election. The Ropers cite Megginson v. Turner, 565 So.2d 247 (Ala.1990),[7] to support their assertion that "[t]he remedy provided in the [FCPA]revocation of the certificate of electionis mandatory and requires the removal of the offending candidate's name from the ballot." (Ropers' reply brief, p. 5.)
The section of the FCPA on which the Ropers rely§ 17-22A-21requires the forfeiture of an election under certain circumstances by a candidate who fails to file a statement or a report required by the FCPA. The fundamental problem with the Ropers' reliance on § 17-22A-21, however, is that they fail to place § 17-22A-21 in the context of the entire statutory scheme established by the legislature in Title 17. Moreover, the Ropers misapprehend this Court's decision in Davis v. Reynolds, 592 So.2d 546 (Ala.1991).
In Davis, this Court examined § 17-22A-21 within the context of the FCPA and noted:
"The [FCPA] was enacted by the Legislature in 1988. Its primary laudable purpose was to require candidates for public office in Alabama to disclose campaign contributions and expenditures *476 prior to elections. It repealed parts of the Corrupt Practices Act, § 17-22-1 et seq., which required disclosure only after the election. To accomplish this purpose, the legislature included sanctions for violation of the statute. For a failure to file a statement required by the statute prior to the election, § 17-22A-21 provides the harshest penalty of all:
"`A certificate of election or nomination shall not be issued to any person elected or nominated to state or local office who shall fail to file any statement or report required by this Chapter.'
"Thus, any candidate who fails to file a statement that is required to be filed by the [FCPA], prior to the election for the purpose of informing the voting public of the sources of his contributions and the subject of his expenditures, shall forfeit the election.
"For the candidate who does not fail to file a statement before the election, but who files such a statement late, § 17-22A-22(b) prescribes and applies punishment in the form of a criminal penalty.
"These two distinct sanctions, forfeiture of the election for those candidates who fail to file the disclosure statements required by the statute prior to the election, and criminal fines for candidates who file such disclosure statements prior to the election but not within the time prescribed by the statute, carry out the legislative intent of full disclosure before the election; but these sanctions do not require a candidate who discloses his contributions and expenditures before the election (but not within the time provided by the statute) to forfeit the election. That sanction is too harsh to visit upon a candidate who has not failed to file the statements required, but has merely filed them late. After all, this candidate is the candidate chosen by the people as their representative, even though his disclosure statement was filed untimely. The people's choice should prevail even if the candidate is in violation of the time constraints of the statute, if he files his disclosure statements prior to the election.
"A fair reading of the [FCPA] leads one inescapably to the conclusion that the Legislature made a clear distinction between penalties that would apply to those candidates who fail to file disclosure statements and those candidates who merely file them late. It is not surprising that it did so. It was designed to differ from the Corrupt Practices Act, which provided only the harsh sanction of removal of the candidate's name from the ballot. The purpose of the [FCPA] is to aid the voting public in choosing its state and county officials. Its purpose is not to deny the voting public its choice of representative, even if he or she has failed to meet a statutory deadline for filing disclosure statements, so long as he or she nevertheless has filed the statements prior to the election.
"The penal provisions of the [FCPA] have been addressed by this Court in only one case. In Megginson v. Turner, 565 So.2d 247 (Ala.1990), this Court affirmed a trial court's ruling that Megginson could not be certified as the Democratic nominee because he had filed his statement naming his principal campaign committee more than five days after his announcement and declaration of candidacy. Megginson cited Jones v. Phillips, 279 Ala. 354, 185 So.2d 378 (1966); Owens v. Heartsill, 279 Ala. 359, 185 So.2d 382 (1966); Herndon v. Lee, 281 Ala. 61, 199 So.2d 74 (1967); and Kirksey v. Democratic Party of Alabama, 495 So.2d 638 (Ala.1986), as authority for its holding. However, those *477 cited cases were decided under the Corrupt Practices Act, which did not provide the separate sanctions that the [FCPA] provides.
"All candidates are, of course, subject to the five-day requirements of § 17-22A-4. If one fails to file a statement required by that section before the election, § 17-22A-21 applies the sanction: forfeiture of the election. If one files the statement required by § 17-22A-4 before the election, but not within the five days required by that section, § 17-22A-22(b) applies. To the extent that Megginson v. Turner, supra, holds to the contrary, it is overruled.
"The [FCPA] marks a new day in Alabama campaign practices. It requires full and complete disclosure by all candidates for public office of the sources of all contributions and the subject of all expenditures. It requires this disclosure prior to the election. If it is not made before the election, the candidate may not be certified to the office if he wins the election, § 17-22A-21. It requires this disclosure shortly after one becomes a candidate. If it is not made within the time required, but before the election, the candidate is subject to the penalties provided by § 17-22A-22(b). Its purpose is to inform the voting public of the source of a candidate's financial support. This purpose is served by the sanctions provided for in the Act. This Court has no authority to enlarge the sanctions provided for in the legislation itself."
592 So.2d at 555-56 (footnote omitted).
In the present case, the Ropers filed their action on October 30, 2006more than two months after Rhodes had been certified as the winner of the runoff election. As noted, the Ropers' action was based on Rhodes's alleged failure to file reports required to be filed by the FCPA. Because of Rhodes's alleged failure to file the reports required by the FCPA, the Ropers argued that Rhodes was ineligible to be elected in the general election.
The Ropers did not argue expressly that Rhodes's alleged failure to file the FCPA reports also made him ineligible to be elected in the primary or runoff elections. However, the Ropers' allegations necessarily lead to the conclusion that if Rhodes failed to file reports required to be filed by the FCPA before the primary and runoff elections, he was ineligible to participate in those elections. Consequently, to the extent the Ropers alleged FCPA violations occurring before the primary and runoff elections, the Ropers are actually claiming that Rhodes was ineligible to participate in those elections. In that regard, the Ropers' claim is an attempt to contest the primary and runoff elections, because if the Ropers prevailed in their attempt to have Rhodes removed from the general election ballot on the basis of alleged FCPA violations that occurred before the primary and runoff elections, the results of the primary and runoff elections would be affectedindeed they would be negated.
As the Court noted in Harvey, § 17-15-6 prohibits a court from exercising jurisdiction over any proceeding seeking to
"ascertain[] the legality, conduct or results of any election, except so far as authority to do so shall be specially and specifically enumerated and set down by statute; and any injunction, process or order from any judge, court or officer in the exercise of chancery powers, whereby the results of any election are sought to be inquired into, questioned or affected, or whereby any certificate of election is sought to be inquired into or questioned, save as may be specially and specifically enumerated and set down by statute, shall be null and void."
*478 (Emphasis added.) See also Etheridge v. State ex rel. Olson, 730 So.2d 1179, 1182 (Ala.1999) ("We note again, as we have done on previous occasions, that a court does not have jurisdiction to interfere in an election result unless a statute authorizes it to do so. The Legislature has made this abundantly clear. See § 17-15-6." (emphasis added)). Under Harvey, supra, and Davis, supra, to the extent the Ropers alleged that Rhodes violated the FCPA before the primary and runoff elections, the Ropers were contesting those elections on the basis that Rhodes was allegedly ineligible to be a candidate in those elections. A procedure for contesting primary and runoff elections is set forth in §§ 17-16-70 through -89, Ala.Code 1975, and § 17-16-71(2) includes the ineligibility of a candidate as a ground for contesting a primary or runoff election. However, the Ropers did not follow the procedure outlined in §§ 17-16-70 through -89, Ala. Code 1975, and the Ropers have not cited another statutory provision authorizing their action to the extent it contested the primary and runoff elections on the basis that Rhodes was allegedly ineligible to be a candidate in those elections. Consequently, the trial court did not have jurisdiction to hear the Ropers' claims alleging FCPA violations by Rhodes that occurred before the primary and runoff elections. See also Dunning v. Reynolds, 570 So.2d 668 (Ala.1990); Ex parte Skidmore, 277 Ala. 221, 168 So.2d 483 (1964).
In their materials filed with this Court, the Ropers suggest that Rhodes failed to file reports that the FCPA required to be filed before the general election, and they insist that that allegation entitles them to relief.[8] However, at the time they filed their action on October 30, 2006, the Ropers could not have obtained relief under § 17-22A-21 on a theory that Rhodes had failed to file a required report before the general election, because the general election had not yet occurred. At most, they could have alleged that Rhodes had failed to timely file an FCPA-required report. Under Davis, supra, the penalty imposed by § 17-22A-21 does not apply to a candidate who has filed an untimely FCPA-required report, so long as that untimely report is filed before the election to which it applies. Instead, § 17-22A-21 applies only when a candidate does not file a report before the election.
In any event, even if Rhodes did not file an FCPA-required report before the general election, the trial court did not have jurisdiction over the matter because the Ropers did not pursue an election contest in accordance with Chapter 15 of Title 17, Ala.Code 1975.
"Under the holding in Davis v. Reynolds, [592 So.2d 546 (Ala.1991)], a candidate who does not file a statement or report required by the FCPA before the election in question is ineligible to be elected to the office at that election. Any challenge to [Rhodes's] election on *479 that basis should have been filed as an election contest pursuant to [Chapter 15 of Title 17, Ala.Code 1975].... [The Ropers] should have filed an election contest. [They] did not do so, and the circuit court did not have jurisdiction to entertain this action for [declaratory and injunctive] relief."
Harvey, 715 So.2d at 780-81.[9]

Conclusion
The trial court did not have jurisdiction over the action. Thus, its judgment is void, and the Ropers' appeal is dismissed.
APPEAL DISMISSED.
COBB, C.J., and LYONS, WOODALL, STUART, and PARKER, JJ., concur.
SEE and BOLIN, JJ., concur specially.
MURDOCK, J., dissents.
SEE, Justice (concurring specially).
I concur specially. I believe the main opinion does the best that can be done to carve a path through this part of the thicket of campaign law; however, I also believe today's decision will prove problematic in future election-law cases. I find it, to say the least, unsettling that an area of the law intended to regulate ordinary citizens as they seek to serve their state challenges the understanding of highly skilled lawyers. The various statutes sorely need to be harmonized.
BOLIN, Justice (concurring specially).
I concur fully with the main opinion. I write specially to emphasize the logical interplay of the various, and often disparate, election statutes that govern pre-election campaign financial disclosure, as well as jurisdiction to hear and determine disputes and also to provide available remedies for violations of those statutes.
As the main opinion notes, the beginning point for discussion in this matter is § 17-15-6,[10] Ala.Code 1975, which prevents a court from exercising jurisdiction over any proceeding seeking to

*480 "ascertain[] the legality, conduct or results of any election, except so far as authority to do so shall be specially and specifically enumerated and set down by statute; and any injunction, process or order from any judge, court or officer in the exercise of chancery powers, whereby the results of any election are sought to be inquired into, questioned or affected, or whereby any certificate of election is sought to be inquired into or questioned, save as may be specially and specifically enumerated and set down by statute, shall be null and void...."
(Emphasis added.)
The statutory jurisdictional exception, i.e., "save as it may be specially and specifically enumerated and set down by statute," is § 17-5-18 (formerly 17-22A-21), Ala.Code 1975, which states: "A certificate of election or nomination shall not be issued to any person elected or nominated to state or local office who shall fail to file any statement or report required by this chapter. A certificate of election or nomination already issued to any person elected or nominated to state or local office who fails to file any statement or report required by this chapter shall be revoked." (Emphasis added.) It is clear from its language that § 17-5-18 is concerned solely with whether, depending upon a candidate's compliance with the pre-election reporting requirements of the FCPA, a certificate of election or nomination should properly be issued to that candidate in the event he or she wins the election, and if any such certificate has been issued and should not have been, whether that certificate should be revoked. Thus, the subject matter of § 17-5-18 falls squarely within the exception allowing a court to exercise jurisdiction if the procedure for doing so is "specifically enumerated and set down by statute," as provided in § 17-15-6.
The questions that necessarily follow a finding of a basis for subject-matter jurisdiction are: What remedy is available to challenge a certificate of election "sought to be inquired into or questioned," and what is the time limitation, if any, in which this remedy may be invoked? The answer to these questions does not lie within the FCPA; rather, it lies within election-contest provisions statutorily created for challenges in municipal, primary, and general elections.
The main opinion correctly points out that § 17-13-70 et seq., Ala.Code 1975 (formerly § 17-16-70 et seq.), provides for a contest to the result of a primary election and is also applicable to a contest to the result of a "second primary election," commonly called a primary runoff election, as provided for in § 17-13-18(b). Section 17-13-71(2) specifically states that a ground for a primary-election contest is "[w]hen a person whose nomination is contested was not eligible to the office sought at the time of the declaration of nomination." This Court stated in Harvey v. City of Oneonta, 715 So.2d 779, 780 (Ala.1998), that "[u]nder the holding in Davis v. Reynolds, [592 So.2d 546 (Ala.1991)], a candidate who does not file a statement or report required by the FCPA is ineligible to be elected to the office at the election." Although Harvey dealt with a municipal "election" rather than a "nomination" by a political party, the result concerning candidate eligibility is the same. Roper had an opportunity on both the day of the primary and the day of the primary runoff election to check the records in the office of the probate judge of Crenshaw County to ascertain whether Rhodes had fully complied with the reporting requirements of the FCPA and would have had 24 hours after the declaration of the results of each election in which to file a contest questioning *481 Rhodes's "eligibil[ity] to the office sought at the time of the declaration of nomination," based upon Rhodes's alleged failure to comply with the reporting requirements of the FCPA and the attendant consequences of § 17-5-18. Therefore, an election contest provides the "where" and "when" remedy to pursue a failure-to-file transgression of § 17-5-18 of the FCPA.[11]
The FCPA was designed to remedy the inadequacies of prior campaign-disclosure laws contained in the Corrupt Practices Act, which it repealed. The public has the absolute right to know who made contributions to a candidate for any political office, as well as to whom the candidate has made expenditures, and the only way that an act requiring disclosure is meaningful is if such disclosures are made before an election. Candidates who are late in complying with the reporting requirements of §§ 17-5-4, 17-5-5, and 17-5-8 (formerly §§ 17-22A-4, 17-22A-5, and 17-22A-8), as opposed to candidates who are in total noncompliance by a failure to file, are subject to the criminal penalties now contained in § 17-17-35(b), and I note that § 17-17-35(e) imposes a two-year statute of limitations for the prosecution of violations of these sections. In comparison, the penalty provided for in § 17-5-18, even though civil rather than criminal in nature, is more severe in its sanction, for the reason that the public has been totally deprived of this information by the candidate's failure to file before the day of the election. This sanction, the equivalent of an electoral death knell, strikes at the eligibility of the guilty party to receive a certificate of election and his or her privilege to take office and serve the public trust. Therefore, this issue should be decided early, as election-contest procedures so provide, to prevent an ineligible person from taking and holding office improperly for any length of time.
MURDOCK, Justice (dissenting).
The election-contest provisions that have been enacted by the Alabama Legislature comprise Chapter 15 of Title 17 of the Alabama Code.[12] Section 17-22A-21, Ala. Code 1975, is part of the separately enacted Fair Campaign Practices Act, comprising Chapter 22A of Title 17 of the Code. I am not persuaded that an action brought under § 17-22A-21 must be, or even can be, brought as an election contest under Chapter 15.
First, I see nothing in § 17-22A-21 or any other provision of the Fair Campaign Practices Act that purports to require that an action brought thereunder must be *482 brought under the provisions of our election-contest statutes. Section 17-22A-21 provides simply that
"[a] certificate of election or nomination shall not be issued to any person elected or nominated to state or local office who shall fail to file any statement or report required by this chapter. A certificate of election or nomination already issued to any person elected or nominated to state or county office who fails to file any statement or report required by this chapter shall be revoked."
In adopting this provision, the legislature created duties on the part of election officials regarding the issuance and revocation of certificates of election under certain circumstances. Likewise, the legislature in adopting this provision created certain rights in the public, in individual electors, and in candidates. The statute appears to be enforceable by way of actions brought by or against those election officials, actions by the attorney general or other appropriate law-enforcement authorities, and actions by candidates and individual electors. The election-contest provisions of Chapter 15, however, expressly provide only that election contests will be filed by "electors." See Ala.Code 1975, § 17-15-20 (as to general elections) (now § 17-16-47); § 17-16-78(a) (as to primary elections) (now § 17-13-78). Also, as discussed in more detail hereinafter, the focus of the election-contest statutes is on challenges to certified election results, whereas § 17-22A-21 expressly contemplates an action to prevent the issuance of a certification in the event the candidate does not comply with the Fair Campaign Practices Act.
Again, § 17-22A-21 creates certain rights. For aught appearing from that statute, those rights and duties are subject to enforcement in the circuit courts of this State without the necessity of an additional statutory provision explicitly so providing. See generally Art. VI, § 142(b), Ala. Const. 1901 (Off.Recomp.) ("The circuit court shall exercise general jurisdiction in all cases except as may otherwise be provided by law."); King v. Campbell, [Ms. 1060804, Nov. 30, 2007] ___ So.2d ___ (Ala.2007); Dennis v. Prather, 212 Ala. 449, 103 So. 59 (1925). In this regard, § 17-22A-21 is no different than countless other statutes that have been adopted by our legislature unaccompanied by any such explicit provision.[13]
Similarly, I see nothing in the election contest provisions of Chapter 15 stating that an action brought pursuant to § 17-22A-21 must be brought as an election contest.
Section 17-15-6 states:
"No jurisdiction exists in or shall be exercised by any judge, court or officer exercising chancery powers to entertain any proceeding for ascertaining the legality, conduct or results of any election, except so far as authority to do so shall be specially and specifically enumerated and set down by statute; and any injunction, process or order from any *483 judge, court or officer in the exercise of chancery powers, whereby the results of any election are sought to be inquired into, questioned or affected, or whereby any certificate of election is sought to be inquired into or questioned, save as may be specially and specifically enumerated and set down by statute, shall be null and void and shall not be enforced by any officer or obeyed by any person; and should any judge or other officer hereafter undertake to fine or in any wise deal with any person for disobeying any such prohibited injunction, process or order, such attempt shall be null and void, and an appeal shall lie forthwith therefrom to the supreme court then sitting, or next to sit, without bond, and such proceedings shall be suspended by force of such appeal; and the notice to be given of such appeal shall be 14 days."
(Emphasis added.)
Section 17-22A-21 does provide a "specially and specifically enumerated" statutory basis for preventing or causing the revocation of a certificate of election. I see nothing in § 17-5-6, however, that requires all causes of action "specially and specifically enumerated and set down by [a] statute" outside the election-contest statutes to be prosecuted under those election-contest statutes. In other words, § 17-15-6 appears to prohibit common-law actions regarding election matters by providing that only statutory actions will be allowed. Section 17-15-6 does not appear to mandate that all statutory actions necessarily must be brought as election contests.
It is true that, in Harvey v. City of Oneonta, 715 So.2d 779 (Ala.1998), this Court stated that the contestant there, seeking to pursue a claim under the Fair Campaign Practices Act, should have filed an election contest. The Harvey Court cited no persuasive authority for this proposition, however.[14] The case primarily relied upon in Harvey for the assertion that the challenge under the Fair Campaign Practices Act should have been filed as an election contest was Davis v. Reynolds, 592 So.2d 546 (Ala.1991). I find the reasoning of Davis v. Reynolds on this point to be unpersuasive.[15]
*484 The Court in Davis reasoned as follows: When the legislature replaced the former Corrupt Practices Act (which previously had been set out in Chapter 22 of Title 17) with the Fair Campaign Practices Act, it did not amend the statute-of-limitations provision found in Chapter 15 of Title 17, specifically, § 17-15-22, for election contests. Because of this, according to the Davis Court, the legislature must have intended that the statute of limitations continued to apply to actions brought under the Fair Campaign Practices Act. 592 So.2d at 554. The Court provided no authority, however, for its foundational assumption that the statute of limitations for election contests in Chapter 15 was ever in fact applicable to actions brought under the Corrupt Practices Act. The Court just asserted that it was. Nothing in the statute prescribes as much, and, as discussed hereinafter, the precedents of this Court before Davis stood for the contrary proposition.
Early on in the history of the statutes at issue, the Supreme Court offered the following explanation in Beatty v. Hartwell, 217 Ala. 239, 240, 115 So. 164, 165 (1927):
"Section 545 of the Code of 1923[, a precursor to § 17-15-1 of the election-contest statutes,] sets forth the grounds upon which the office of probate judge may be contested, and ground (2), the only one having any bearing upon this case, says: `When the person whose election is contested was not eligible thereto at the time of said election.' This means when the person was incompetent or disqualified at the time of the election, and not when he became disqualified because of illegal or improper conduct in and about the election. Finklea v. Farish, 160 Ala. 230, 49 So. 366 [(1909)]. In other words, a candidate may be eligible to the office the day of the election, but on that day may do some act in violation of the Corrupt Practice[s] Act as would disqualify him from assuming or holding the office. True, section 587 of the Code[, part of the Corrupt Practices Act,] provides that the conduct as set up in [the complaint] shall constitute a violation of the act and shall disqualify the candidate for said office. But this does not mean that it rendered him not eligible as a candidate on the day of the election within the meaning of ground (2) in section 545 of the Code. We therefore hold that [the complaint] failed to set up a ground for contest as provided by sections 1884 and 545 of the Code of 1923. If the contestee violated the Corrupt Practice[s] Act so as to become disqualified under [that Act], he should be removed by some method other than a contest of the election. Watters v. Lyons, 188 Ala. 52[5], 66 So. 436 [(1914)]."
(Emphasis added.)
As in Beatty, the only provision of the election-contest statutes that has any bearing on the question before us is § 17-15-1(2), which provides for an election contest "[w]hen the person whose election to office is contested was not eligible thereto at the time of the election." Although Beatty was decided under the Corrupt Practices Act, the Court's analysis as to whether a candidate's misconduct under that Act goes to the candidate's "eligibility" to hold office within the meaning of the precursor to § 17-15-1(2) appears to apply with no less force to the Fair Campaign Practices Act.
*485 Bolstering the reasoning provided in Beatty is the fact that election contests under Chapter 15 of Title 17 are, by their nature, contemplated to be contests of certified election results. For example, § 17-15-1 begins by stating that "[t]he election of any person declared elected" to the certain offices may be contested. Section 17-22A-21, on the other hand, specifically provides that a violation of that provision of the Fair Campaign Practices Act will constitute a basis for preventing the issuance of a certificate of election to the candidate. The design of § 17-22A-21 to prevent even the issuance of a certificate of election implies a separate quo warranto action, mandamus petition, or "some method other than a contest of the election," as concluded in Beatty.
Because I am not persuaded of the necessity of bringing an action under § 17-22A-21 as an election contest, I respectfully must dissent from the main opinion's dismissal of the appeal in this case. I would add, however, that the practical outcome achieved by the trial court's judgment and by the main opinion on appeal would appear to be just. The Ropers' challenge to Rhodes's certification as the nominee of the Democratic party for the office of Crenshaw County Board of Education member was filed over two months after the primary election and only eight days before the general election. This delay, coupled with the apparent prejudice to the parties and to the orderly conduct of the general election itself that would result if the primary election were to be undone at such a late date, compels a ruling in Rhodes's favor on the ground of laches.[16]
NOTES
[1] When the Ropers filed their complaint in this action, Nancy Worley was the secretary of state and was named as a defendant. Beth Chapman succeeded her in that office in January 2007. Rule 43(b), Ala. R.App. P., provides:

"When a public officer is a party to an appeal or other proceeding in the appellate court in that officer's official capacity, and during its pendency dies, resigns, or otherwise ceases to hold office, the action shall not abate and the public officer's successor is automatically substituted as a party."
See also Rule 25(d)(1), Ala. R. Civ. P.
[2] Act No. 2006-570, Ala. Acts 2006, which took effect on January 1, 2007, reorganized and amended Title 17, Ala.Code 1975. Unless otherwise noted, all citations in this opinion are to the earlier version of Title 17, which was in effect at the time the present action was filed.

In Title 17, as revised by Act No. 2006-570, the FCPA is codified at § 17-5-1 et seq., Ala.Code 1975. The revised Title 17 is found in Volume 13A of the Code of Alabama; that volume includes a "Disposition Table" indicating the disposition of the sections found in Title 17 before the reorganization effected by Act No. 2006-570.
[3] The relief sought by the Ropers included a declaratory judgment, an injunction, a writ of mandamus, and a writ of quo warranto.
[4] The trial court also held that the secretary of state was not a proper party to the proceeding. On their notice of appeal, the Ropers listed the secretary of state as an appellee, and the secretary of state has filed a brief as an appellee in this Court. However, the Ropers have made no argument to this Court on the issue whether the secretary of state was a proper party, and they therefore have waived the issue. Beiersdoerfer v. Hilb, Rogal & Hamilton Co., 953 So.2d 1196, 1206 (Ala. 2006) ("`Issues not argued in a party's brief are waived.'" (quoting Waddell & Reed, Inc. v. United Investors Life Ins. Co., 875 So.2d 1143, 1167 (Ala.2003))).
[5] Section 17-22A-4 of the FCPA requires a candidate for office to file a statement with the secretary of state or the judge of probate, as provided in § 17-22A-9, showing, among other things, the names of the individuals serving as the principal campaign committee for the candidate. Section 17-22A-8 requires "[t]he treasurer of each principal campaign committee or other political committee" to file at designated times a report outlining the contributions to the candidate and the expenditures of the committee. The Ropers alleged that before the primary and runoff elections Rhodes had failed to file reports by the times set forth in § 17-22A-8(a), which provides:

"The treasurer of each principal campaign committee or other political committee shall file with the Secretary of State or judge of probate, as designated in Section 17-22A-9, reports of contributions and expenditures at the following times in any year in which an election is held:
"(1) Forty-five days before and between 10 and five days before the date of any election for which a political committee receives contributions or makes expenditures with a view toward influencing such election's result;
"(2) Provided, however, that a report shall not be required except between five and 10 days before a run-off election."
Before the primary, Rhodes filed two documents entitled "Waiver of Report," which stated that Rhodes had not "reached the filing threshold amount [of $1,000 in contributions or expenditures] as set forth in the [FCPA]." See § 17-22A-2(1), (2), and (4). The Ropers contended that those statements were inaccurate and that Rhodes in fact had reached the filing threshold amount and therefore was subject to the reporting requirements of the FCPA.
[6] The decision in Harvey does not state directly whether Harvey filed her complaint before the election occurred. However, because she sought an injunction preventing the certification of Whited as the winner of the election, it appears that Harvey filed her complaint after the election but before the certification of Whited as the winner. 715 So.2d at 779.
[7] Although the Ropers do not so note, Megginson was overruled by this Court in Davis v. Reynolds, 592 So.2d 546, 556 (Ala.1991).
[8] See, e.g., Ropers' brief, p. 12 ("The Ropers sought a judgment declaring that Rhodes violated the [FCPA] by failing to file the required reports in connection with the primary, runoff, and general election[s]."); Ropers' reply brief, p. 7 ("Rhodes ... failed on several occasions to file required reports under the [FCPA] ... before the general election....").

Rhodes disputes the Ropers' claim. The record shows that Rhodes initially filed a waiver before the general election. That waiver stated he had not reached the filing threshold amount under the FCPA and therefore was not subject to the FCPA. See supra note 5. However, Rhodes testified at the hearing the day before the general election that he would file an "amended" report before the end of that day. The Ropers have not pointed to any evidence suggesting that Rhodes failed to follow through on his plan to file an "amended" report.
[9] The Court noted in Bell v. Eagerton, 908 So.2d 204, 206 (Ala.2002):

"[T]his Court identified an exception to § 17-15-6 in City of Adamsville [v. City of Birmingham, 495 So.2d 642 (Ala.1986)]:
"`This Court has held that these provisions [in § 17-15-6], which formerly appeared in the 1940 Code as Tit. 17, § 235, do not prevent the enjoining of an election. Dennis v. Prather, 212 Ala. 449, 103 So. 59 (1925). See also Birmingham Gas Co. v. City of Bessemer, 250 Ala. 137, 33 So.2d 475 (1947).'"
We recognized this exception to the jurisdictional limitation stated in former § 17-15-6 (currently § 17-16-44) in our recent decision in King v. Campbell, [Ms. 1060804, Nov. 30, 2007] ___ So.2d ___, ___ (Ala.2007), in which we quoted the following from Dennis v. Prather, 212 Ala. 449, 103 So. 59 (1925):
"`The general rule without question is that courts of equity will not interfere by injunction with the holding of elections political in character, nor take jurisdiction of a contest after the election is held. But this court is committed to the proposition that equity will interfere by injunction to restrain elections not authorized by law. It will also restrain the usurpation of office, or the assumption of functions of office where no lawful office exists.'"
___ So.2d at ___ (quoting Dennis, 212 Ala. at 452, 103 So. at 61-62 (emphasis added in Dennis)). Unlike King, which involved a claim that the entire election was void because the challenged office filled at that election was unconstitutional, the present case involves a claim that, because of alleged violations of the FCPA, a particular candidate was ineligible to be a candidate for an otherwise valid office. Moreover, the Ropers do not argue that the Dennis exception applies in the present case.
[10] When Title 17, Ala.Code 1975, was reorganized following the enactment of Act No. 2006-570, Ala. Acts 2006, § 17-15-6 became § 17-16-44. See note 2 in the main opinion.
[11] I note that there may be practical differences between municipal elections (as in Harvey), primary elections (as herein), and general elections. Of the three types of elections, only general elections permit write-in candidates. See §§ 17-6-27 and 17-7-21(b)(8) (formerly §§ 17-8-5 and 17-24-3(b)(8)) for general elections and § 11-46-25(g) and (h) for mayor-council elections. Therefore, only in general elections are unopposed candidates required to have their names printed on election ballots and stand for election, because a write-in candidate could conceivably win the election by receiving more votes than did a party nominee or independent candidate whose name appears on the ballot. However, because there is no statutory provision for write-in voting in either municipal or primary elections, a candidate who is the only person who qualifies for mayor or a council position in a municipal election, or a candidate who is the sole qualifier for any elected position in a partisan primary election, is the automatic winner of the respective office or nomination and is not listed as a candidate on the ballot in the election. However, the issue of an unopposed candidate who violates a mandatory FCPA provision is not before the Court in this proceeding.
[12] References to statutory provisions are to the statutes in effect at the time of, and that govern, the acts and omissions at issue in this case. See note 2 in the main opinion.
[13] In Bostwick v. Harris, 421 So.2d 492 (Ala. 1982), for example, the issue presented on appeal was whether the circuit court had jurisdiction over an action seeking a declaratory judgment or, in the alternative, a writ of mandamus, and a request for injunctive relief to enforce the rights and duties created by Ala.Code 1975, § 17-16-21 (prohibiting the same person from being a candidate for more than one State office of the same classification). That statute, like § 17-22A-21, merely proscribes certain conduct and, in so doing, creates rights on the part of electors, such as those who brought the action; it contains no provision specifically authorizing the circuit court to entertain actions in equity to enforce those rights and proscriptions. Yet the Bostwick Court held that the circuit court had jurisdiction over the action as brought, while at the same time specifically stating that the matter before it was "not an election contest case." 421 So.2d at 493.
[14] Three of the four cases relied upon by the Harvey Court are distinguishable from the present case, either because they involved no "specially and specifically enumerated" statutory basis for the relief requested, see Ex parte Baxley, 496 So.2d 688 (Ala. 1986), and Turner v. Cooper, 347 So.2d 1339 (Ala. 1977), or because they involved a failure to exhaust administrative remedies, see Dunning v. Reynolds, 570 So.2d 668 (Ala. 1990).
[15] I also find questionable the holding in Davis that a candidate who files the forms required by the Fair Campaign Practices Act before the election, even though he or she does not file them at the time required by the statute, is not subject to the sanctions prescribed in § 17-22A-21. The phrase "before the election" is nowhere found in § 17-22A-21.

Less than five months before it released the decision in Davis v. Reynolds, this Court decided the case of Megginson v. Turner, 565 So.2d 247 (Ala.1990). Megginson, together with the several cases cited by it as authority, indicates that a failure to file a statement required by the Fair Campaign Practices Act within the time prescribed by that Act is tantamount to a failure to file under the Act.
Further, I am at a loss as to how the filing of the required disclosure forms beyond the prescribed statutory deadline  say, for example, late in the day on the eve of the election  necessarily serves to "carry out the legislative intent of full disclosure before the election," as the majority in Davis concluded. 592 So.2d at 555. See City of Talladega v. Pettus, 602 So.2d 357, 362 (Ala.1992) (Maddox, J., concurring specially, joined by Houston, J.) (reiterating his position in Davis v. Reynolds, 592 So.2d at 556-59 (Maddox, J., dissenting), that the interpretation placed on the Fair Campaign Practices Act by the majority in Davis "essentially rewrote the penalty provisions of § 17-22A-21 and 17-22A-22" in a way that "`could completely frustrate the very purpose of the [Fair Campaign Practices Act],'" and expressing his hope that "[w]hen and if the Court is presented with a case in which it can reevaluate its holding in Davis,... it will do so").
[16] I also note that the parties have not argued or briefed to this Court the issue whether we should overturn Davis.